IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MW BUILDERS, INC., a Missouri
corporation, and GREAT
AMERICAN ALLIANCE INSURANCE
COMPANY, an Ohio corporation,

          Plaintiffs,

      v.

                                  Civil No. 02-1578-AS

SAFECO INSURANCE COMPANY OF        FINDINGS AND RECOMMENDATION
AMERICA, a Washington
corporation; SAFECO INSURANCE
COMPANY OF OREGON, an Oregon
corporation; AMERICAN STATES
INSURANCE COMPANY, an Indiana
corporation; ELLIOT, POWELL,
BADEN & BAKER, INC., an Oregon
company; LAWRENCE REX ESTATE,
d/b/a REX & COMPANY (by and
through its personal
representative, L.V. Rex); and
LAWRENCE REX TRUST (by and
through its trustee, L.V. Rex),

          Defendants.

_____

1 - FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

## PENDING MOTIONS

Presently before the court are six summary judgment motions. They are as follows: SAFECO's Motion for Partial Summary Judgment (doc #48); Defendant Elliott, Powell, Baden & Baker's Motion for Summary Judgment (doc #67); Motion for Summary Judgment filed by Rex Defendants (doc #72); MW Builders' Motion for Summary Judgment Against Defendants Elliott, Powell, Baden & Baker and Rex & Company (doc #76); MW Builders' Motion for Summary Judgment Against Defendants SAFECO and American States (doc #80); and SAFECO's Second Motion for Summary Judgment (doc #85). Oral argument was heard on all motions and for the reasons that follow, SAFECO's Motion for Partial Summary Judgment should be granted in part, and denied, in part.[1]

## PROCEDURAL BACKGROUND

Plaintiffs, MW Builders, Inc., and Great American Alliance Insurance Company (collectively MW Builders), filed a complaint against various named defendants seeking contribution, indemnification and defense costs. The named defendants are as follows: Safeco Insurance Company of America, Safeco Insurance

---

[1] This Findings and Recommendation (F&R) resolves only SAFECO's Motion for Partial Summary Judgment (doc. #48) filed on October 22, 2003. Decisions on the remaining motions –– MW Builders' and SAFECO's cross-motions for summary judgment (docs. #80, 85); and MW Builders' and Elliot's and Rex's cross-motions for summary judgment (docs. #76, 67, 72) –– will follow in successive F&R's.

2 - FINDINGS AND RECOMMENDATION

Company of Oregon, American States Insurance Company (collectively SAFECO), Elliott, Powell, Baden & Baker, Inc. (Elliott), Rex & Company and Lawrence Rex Estate and Lawrence Rex Trust (collectively Rex). SAFECO defendants filed a third-party complaint against St. Paul Fire & Marine Insurance seeking contribution for any liability insurance coverage for the construction defect claims arising from the Candlewood Suites Hotel project.

MW Builders asserts ten claims for relief, including: (1) declaratory judgment of coverage (MW Builders as insured); (2) breach of contract (MW Builders as insured); (3) declaratory judgment of coverage (Portland Plastering as insured); (4) breach of contract (Portland Plastering as insured); (5) breach of the duty of good faith and fair dealing; (6) negligence by Elliott; (7) breach of third party contract by Elliott; (8) misrepresentation by Elliott; (9) estoppel; and (10) contribution and indemnity. Subsequently, on a motion filed by Rex, the court dismissed counts one through five, nine and ten against Rex.

## FACTUAL BACKGROUND

In the mid-1990s, MW Builders entered into an agreement with Candlewood Hotel Company, LLC., to construct the Candlewood Suites Hotel in Hillsboro, Oregon (Hotel). The building plans that were prepared for MW Builders specified that the exterior of the Hotel was to be clad with an exterior insulation and finishing system

(EIFS). MW Builders subcontracted with Gary Thompson, dba Portland Plastering, to perform specific construction work, including installation of the EIFS on the building (Subcontract). The Subcontract expressly required Portland Plastering to obtain and provide insurance coverage, including general liability insurance and excess (umbrella) insurance coverage, for the benefit of MW Builders and naming MW Builders as an additional insured on the policy as follows:

12.2 Such insurance shall include the following terms and conditions:

. . . .

(g) Additional Insureds. Subcontractor furnished insurance (except Workers' Compensation Insurance) shall name MW and all their assigns, subsidiaries and affiliates as additional insureds as their respective interests may appear.

(h) Insurance Primary. All policies of insurance provided pursuant to this article shall be written as primary policies, not contributing with and not in excess of the coverage of the indemnities.

### The CGL Policies Issued by SAFECO

During the one-year period beginning on August 17, 1996, and for three renewals, Gary Thompson, dba Portland Plastering, was the named insured under an insurance policy issued by SAFECO,[2] which

---

[2]    The insurance was actually purchased from American States Insurance Co. However, American States was subsequently purchased by SAFECO and SAFECO was the insurance company that dealt with MW Builders' claims.

provided commercial general liability (CGL)[3]. The declarations for the 1996-1997 CGL Policy and the 1997-1998 CGL Policy do not identify MW Builders as an insured, nor is MW Builders identified as an insured in any endorsement to those policies. The liability part of both policies extend coverage to any "Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The liability coverage also extends to any "inured," which the policies define as "any person or organization qualifying as such under WHO IS AN INSURED (SECTION II)."

However, the 1997-1998 CGL Policy issued by SAFECO did include an Additional Insured endorsement (Form CG 20 33). The endorsement provided that SAFECO would automatically add a party as an additional insured when Portland Plastering entered into a contract requiring such insurance. Form CG 20 33 provides:

> ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU
>
> This endorsement modifies insurance provided under the following:

---

[3]    The policy numbers and policy periods are as follows: Policy 01-CD-229396-5, with an effective date between August 17, 1996, and August 17, 1997 (1996-1997 CGL Policy); Policy 01-CD-229396-6, with an effective date between August 17, 1997, and August 17, 1998 (1997-1998 CGL Policy); Policy 01-CD-229396-7, with an effective date between August 17, 1998, and August 17, 1999 (1998-1999 CGL Policy); and Policy 01-CD-229396-8, with an effective date between August 17, 1999, and August 17, 2000 (1999-2000 CGL Policy).

Who is An Insured (Section II) is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured.  A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

The two renewal policies issued by SAFECO to Portland Plastering after August 17, 1998, i.e., 1998-1999 CGL Policy and 1999-2000 CGL Policy, included a Liability Plus endorsement (Form CG 76 35).  Form 76 35 provides, in part:

> 5.    Any person or organization for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following additional provisions:
>
>     a.    The contract, agreement or permit must be in effect during the policy period shown in the Declarations, and must have been executed prior to the "bodily injury," "property damage, "personal injury," or advertising injury."
>
>     b.    The person or organization added as an insured by this endorsement is an insured only with respect to liability arising out of:
>
>           . . . .
>
>     (2)    Your ongoing operations for that insured, whether the work is performed by you or for you . . . .

### *The Certificates of Liability Insurance*

On January 29, 1997, Rex issued a Certificate of Liability Insurance that identified MW Builders as a "Certificate Holder" under Portland Plastering's 1996-1997 CGL Policy.  The Certificate did not identify MW Builders as an additional insured under that

6 - FINDINGS AND RECOMMENDATION

1996-1997 CGL Policy.    On February 5, 1997, Rex issued a Certificate of Liability Insurance that identified MW Builders as an additional insured on Portland Plastering's auto liability coverage during that same period.

On July 13, 1998, and on September 23, 1998, Thompson's insurance agent Elliott issued Certificates of Liability Insurance for the SAFECO 1996-1997 CGL Policy and the 1998-1999 CGL Policy. The Certificate dated July 13, 1998, reflected that Portland Plastering was insured under policy number 01CD22939650 during the one-year period beginning on August 17, 1996, and provided that "MW BUILDERS, INC IS NAMED AS ADDITIONAL INSURED AS RESPECTS THEIR INTEREST."[4]   The Certificate dated September 23, 1998, reflects that Portland Plastering was insured under policy number 01CD22939660[5] during the one-year period beginning August 17, 1998, and provided that "CERTIFICATE HOLDER IS NAMED AS ADDITIONAL

---

[4]    The Certificate of Liability Insurance on the 1996-1997 CGL Policy issued by Elliott on July 13, 1998, was issued almost one year after the 1996-1997 CGL Policy period had expired.

[5]    The court notes that the "Policy Effective Date" on this Certificate of Liability Insurance is listed as 8/17/98-8/17/99; and the policy limits set forth in the Certificate issued September 23, 1998, reflect the terms of the corresponding 1998-1999 CGL Policy. However, the Certificate states that it was issued as proof of Policy No. 01CD22939660, which was in effect between 8/17/97-8/17/98.   This discrepancy is not explained by either party and, as such, the court will assume that Certificate of Liability Insurance issued on September 23, 1998, was for the 1998-1999 CGL Policy No. 01CD22939670 and that the policy number listed in the Certificate of Liability Insurance is in error.

7 - FINDINGS AND RECOMMENDATION

INSURED AS RESPECTS THEIR INTEREST." Both certificates include the following terms:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.
>
> . . . .
>
> NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES

Further, Portland Plastering's policy with SAFECO provided, among other things, that the policy terms "can be amended or waived only by endorsement issued by [American States] and made a part of this policy."

### *Water Damage to the Hotel and Subsequent Litigation*

Construction began on the Hotel project in 1996 and was substantially completed by June 1997. After work was completed, the new owners, Larkspur Hospitality Company (Larkspur), became aware of substantial water intrusion and damage to the building. MW Builders continued to work with Larkspur to correct the water leakage problem and requested subcontractors, including Portland Plastering, to correct various construction issues. Portland Plastering performed repair work at the Hotel during September 1998. Despite the efforts to repair bulging and cracked EIFS material, it became evident that the work was faulty and was leading to wide-spread water damage at the Hotel.

8 - FINDINGS AND RECOMMENDATION

Larkspur made a claim for water damage to the Hotel and sought AAA arbitration. Larkspur alleged negligence, breach of contract, breach of warranty, indemnification and products liability, arising out of the alleged damage cause by moisture and water intrusion into the Hotel. Larkspur sought damages for the cost to repair rot and damage to the hotel plus consequential damages and attorney fees in the range of $2,538,874.07 to $2,886,426.02. MW Builders denied liability and affirmatively asserted that the damages to the Hotel was the primary fault of Portland Plastering.

MW Builders tendered the defense and sought indemnity of Larkspur's claim from Portland Plastering and SAFECO (its insurer). SAFECO denied the tenders and declined to defend MW Builders or provide indemnity on behalf of MW Builders or Portland Plastering. MW Builders filed a separate demand for arbitration against Portland Plastering alleging that Portland Plastering failed to properly install the EIFS and seal the building and that Portland Plastering's fault and omissions led to damages throughout the complex.

In December 2001, Portland Plastering filed for protection under Chapter 7 of the Bankruptcy Code. On February 22, 2002, Larkspur and MW Builders settled the claims against MW Builders for $2,000,000. Following the settlement, MW Builders was granted an order lifting the stay to permit MW Builders to pursue its claims against Portland Plastering to the extent of its insurance

9 - FINDINGS AND RECOMMENDATION

coverage.  MW Builders proceeded to arbitration against Portland Plastering in June 2003, and James Knoll, the arbitrator appointed to resolve the dispute, determined that the fault of Portland Plastering caused 31% of the damages sustained by the Hotel.  Knoll awarded $620,000 in damages (31% of the $2,000,000 settlement), $70,934.30 in defense costs for Portland Plastering's obligation to defend MW Builders in the underlying claim, and $214,610 in attorneys' fees and costs in pursuing the claims against Portland Plastering.

The Multnomah County Circuit Court entered judgment upon the arbitration award on October 29, 2003.  MW Builders requested SAFECO to pay the arbitrator's award, and SAFECO declined.  To date, SAFECO has not paid any portion of the judgment against Portland Plastering.

## LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). If the moving party shows that there are genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.  United Steelworkers of America

v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).   The
substantive law governing a claim determines whether a fact is
material.   T.W. Elec. Service v. Pacific Elec. Contractors, 809
F.2d 626, 630 (9th Cir. 1987).   Reasonable doubts as to the
existence of a material fact issue are resolved against the moving
party.   Id. at 631.   Inferences drawn from facts are viewed in the
light most favorable to the non-moving party.   Id. at 630- 31.

### DISCUSSION

By this motion, SAFECO seeks summary judgment on the issue of
whether MW Builders is a SAFECO insured.   SAFECO contends that
during the Hotel construction project, Portland Plastering, was the
named insured on the disputed CGL policies.   Further, the CGL
policies did not include an endorsement naming MW Builders as an
additional insured.   Alternatively, SAFECO argues that even if the
CGL policies did include an endorsement naming MW Builders as an
additional insured, the endorsement would be unenforceable under
Oregon law.   See Or.Rev.Stat. § 30.140.   Accordingly, SAFECO
maintains that it is entitled to partial summary judgment against
MW Builders' first and second claims and  to the extent that any of
MW Builders' claims are predicated on the allegation that MW
Builders is an additional insured on SAFECO's CGL policies.

### A.   MW Builders as an Additional Insured

The parties agree that Oregon law governs their rights and
responsibilities under the CGL policies.   See, e.g., Home Indem.

11 - FINDINGS AND RECOMMENDATION

Co. v. Stimson Lumber Co., 229 F.Supp.2d 1075, 1090 n.4 (D.Or. 2001).  Under Oregon law, the interpretation of an insurance policy ordinarily is a question of law for the court.  See, e.g., Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992).   Construction  of  insurance  contracts  requires ascertaining the parties' intent.  Mcleod v. Tecorp International, Ltd., 318 Or. 208, 215, 865 P.2d 1283 (1993).

As mentioned above, the terms of the renewal CGL policies differ in some respects from the original 1996-1997 CGL Policy, i.e., the Additional Insured endorsement to the 1997-1998 CGL Policy and the Liability Plus endorsement to the 1998-1999 and 1999-2000 CGL Policies.  In addition, the various Certificates of Liability Insurance that were issued relate only to the 1996-1997 and the 1998-1999 CGL Policies.  Thus, even though renewal policies were issued, the court will need to consider MW Builders' status as an additional insured for each policy year.

### The 1996-1997 CGL Policy

The  court  will  consider  first  whether  MW  Builders  is  an additional  insured  under  the  1996-1997  CGL  Policy  issued  to Portland Plastering.  The liability portion of the 1996-1997 Policy extended coverage to any "Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."  The liability coverage also extended to any "insured," which the 1996-1997 CGL Policy defined as "any person or

12 - FINDINGS AND RECOMMENDATION

organization qualifying as such under "WHO IS AN INSURED (SECTION II)."

MW Builders concedes that the declarations for the 1996-1997 CGL Policy do not identify MW Builders as an insured, nor is MW Builders identified as an insured in any endorsement to the 1996-1997 Policy.  Rather, MW Builders argues that the 1996-1997 CGL Policy was modified to include it as an additional insured when Elliott issued a Certificate of Liability Insurance, on July 13, 1998, for that 1996-1997 CGL Policy.[6]  MW Builders argues that a certificate of insurance issued by an authorized agent may bind the insurer to provide coverage to the insured.  See U.S. Pipe and Foundry Co. v. Northwestern Agencies, Inc., 284 Or. 167, 172, 585 P.2d 691 (1978); see also American Casualty Company of Reading, Pennsylvania v. Krieger, 181 F.3d 1113, 1121-1123 (9th Cir. 1999)(Question of fact whether insurance company knew that broker held itself out as authorized to issue standard form certificates of insurance on its behalf, thereby conveying impression to persons named as additional insureds that these certificates reflected actual amendments to policy)(applying California law).

The court is unpersuaded by MW Builders' argument that the Certificate of Liability Insurance issued by Elliott almost one year after the policy period had expired was sufficient to

---

[6]    In addition, as mentioned above, on January 29, 1997, Rex issued a Certificate of Liability Insurance simply naming MW Builders as a Certificate Holder.

13 - FINDINGS AND RECOMMENDATION

establish coverage for MW Builders as an additional insured under
Portland Plastering's 1996-1997 CGL Policy.  Certainly, there could
be no coverage for MW Builders for "ongoing operations" under the
1996-1997 CGL Policy pursuant to the July 1998 Certificate of
Liability Insurance as the coverage period for that Policy had
expired almost one year earlier.  See, e.g., Colorado Structures,
Inc. v. North American Capacity Insurance Company, 2003 WL 22749021
(N.D.Cal. 2003); Pardee Construction Co. v. Ins. Co. of the West,
77 Cal.App.4th 1340, 1358-1360, 92 Cal.Rptr. 443 (2000).

    Moreover, the doctrine of estoppel has no application here.
The Certificate of Liability Insurance was issued by Elliott in
July 1998, after Portland Plastering's work on the Hotel was
substantially completed and after the expiration of the policy
period for which that Certificate was issued.  These circumstances
preclude MW Builders from establishing the reasonable or
detrimental reliance elements of an estoppel claim.  See, e.g.,
Herman V. Valley Ins. Co., 145 Or.App. 124, 134, 928 P.2d 985
(1996)(reasonable and detrimental reliance are elements of estoppel
claim); Slate v. Saxon, Marquoit, Bertoni & Todd, 166 Or.App. 1,
999 P.2d 1152 (2000)(detrimental reliance requires proof of a
substantial change of position); see also Hartford Accident and
Indemnity Company v. U.S. Natural Resources, Inc., 897 F.Supp. 466,
472 (D.Or. 1995).

14 - FINDINGS AND RECOMMENDATION

Finally, the Certificates of Liability Insurance issued by Elliott and Rex expressly state on their face that: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER, THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." They also state that the insurance is "SUBJECT TO ALL THE TERMS EXCLUSIONS AND CONDITIONS OF SUCH POLICIES." (The relevant SAFECO CGL Policy is referenced in each certificate.) A number of jurisdictions have held that a certificate of insurance that includes a disclaimer of coverage such as the one here cannot vary, alter, amend or expand the terms of the insurance policy referred to in the certificate. See, e.g., T.H.E. Insurance Company v. City of Alton, 227 F.3d 802, 805-806 (7th Cir. 2000); TIG Ins. Co. v. Sedgwick James of Washington, 184 F.Supp.2d 591, 596 (S.D. Texas 2001), aff'd, 276 F.3d 754 (2003); American Country Insurance Company v. Kraemer Brothers, Inc., 298 Ill.App.3d 805, 810-811; 699 N.E.2d 1056 (1998); see also Baylor v. Continental Casualty Co., 190 Or.App. 25, 34, 78 P.3d 108 (2003); Stallworth v. Sam Yoder Trucking, 109 Or.App. 280, 284-185, 819 P.2d 316 (1991).

Nor does the Certificate of Liability Insurance issued Rex during the policy period, dated January 29, 1997, listing MW Builders, not as an additional insured, but simply as a Certificate Holder, confer the status of additional insured upon MW Builders. Compare American Casualty, 181 F.2d at 1122 (certificate states

that its policy names third-party as an additional insured).  MW Builders is not identified as a Named Insured in any part of the 1996-1997 CGL Policy, and does not qualify as an "insured" as that term is defined in "SECTION II - WHO IS AN INSURED."  Nor are they listed as an additional insured in the Certificate of Liability Insurance issued by Rex on January 29, 1997.  Accordingly, MW Builders does not qualify as a named or additional insured under the liability portion of the 1996-1997 CGL Policy issued to Portland Plastering during that period and SAFECO is entitled to summary judgment on this issue.[7]

### The 1997-1998 CGL Policy

While there was no Certificate of Liability Insurance issued for the 1997-1998 CGL Policy, the terms of that Policy included an Additional Insured endorsement[8] (Form CG 20 33), which provided:

---

[7]    MW Builders argues that summary judgment is not appropriate because, to date, SAFECO has refused to produce a copy of its underwriting file or its representatives for deposition.  As such, MW Builders contends, the court should decline to consider the absence of insurance certificates without first allowing MW Builders to obtain all of the underwriting files and witnesses for deposition.  MW Builders filed a Motion to Compel discovery of this information.  Previously, the court determined that a ruling on MW Builders' Motion to Compel along with SAFECO's Motion to Compel would be deferred until after the court's resolution of the pending summary judgment motions.  As such, the court will not now find that MW Builders' deferred discovery motion is a proper basis for denying summary judgment.

[8]    An endorsement is a "modification to the basic insuring forms in the policy.  Endorsements may alter or vary any term or condition of the policy.  Adams v. Explorer Ins. Co., 107 Cal.App.4th 438, 450, 132 Cal.Rptr.2d 24 (2003).

16 - FINDINGS AND RECOMMENDATION

> ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU
>
> This endorsement modifies insurance provided under the following:
>
> Who is An Insured (Section II) is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

Thus, in order for a person or organization to become an "additional insured" under the terms of Form CG 20 33 the named insured must be obligated by written contract to provide insurance. However, the terms of this automatic endorsement expressly and unambiguously limit coverage to "liability arising out of [the named insured's] ongoing operations performed for that insured." Moreover, coverage for the additional insured ends when operations for that insured are completed.

It is undisputed that he Subcontract between Portland Plastering and MW Builders expressly required Portland Plastering to provide and obtain insurance coverage, including general liability insurance and excess (umbrella) insurance coverage, for the benefit of MW Builders and naming MW Builders as an additional insured on the policy. Thus, the terms of the Subcontract satisfied the requirement of Form CG 20 33 and MW Builders became

17 - FINDINGS AND RECOMMENDATION

an additional insured under the 1997-1998 CGL Policy. Under the terms of the Additional Insured endorsement, MW Builders was covered for liability arising from Portland Plastering's ongoing operations on behalf of MW Builders during the policy period and in accordance with the terms of that Policy. See, e.g., Hartford Accident, 897 F.Supp. at 470-471.

In addition, SAFECO's own documents indicate that MW Builders was entitled to coverage as an additional insured under the Additional Insured endorsement to the 1997-1998 CGL Policy. In a letter dated February 13, 2002, Alden Swan, a Claims Specialist for SAFECO, refers to the Additional Insured endorsement and stated:

> The language of this endorsement again restricts coverage to ongoing operations, and specifies that MW Builders' status as additional insured would end upon Portland Plasterings completion of their work, which I believe was in March of 1997, prior [to] this endorsement being issued. If Portland Plastering's work was indeed completed prior to 8/17/97, this endorsement would not apply to MW Builders.

Finally, in its Reply Memorandum Supporting Second Motion for Summary Judgment, SAFECO states that "MW could only qualify as an additional insured with respect to liability arising out of Thompson's 'ongoing operations' for MW."

The court finds that, pursuant to the Additional Insured endorsement to the 1997-1998 CGL Policy issued to Portland Plastering by SAFECO, MW Builders qualified as an additional insured. As such, MW Builders is entitled to coverage for damages occurring during the policy period (August 17, 1997 - August 17,

18 - FINDINGS AND RECOMMENDATION

1998) that both were caused by Portland Plastering's ongoing operations and were covered by the terms of that Policy.

### The 1998-1999 and 1999-2000 CGL Policies

Likewise the 1998-1999[9] and 1999-2000 CGL Policies included a Liability Plus endorsement (Form CG 76 35) that extended "additional insured" coverage to persons for whom Portland Plastering was required by written contract to provide insurance. Because neither SAFECO or MW Builders argue otherwise, the court will assume for purposes of this motion that the original Subcontract between Portland Plastering and MW Builders satisfied the requirement in the Liability Plus endorsement that Portland Plaster was "required by written contract to provide insurance[.]"

The court finds that, pursuant to the Liability Plus endorsement, MW Builders qualified as an additional insured under the 1998-1999 and the 1999-2000 CGL Policies issued to Portland Plastering by SAFECO. As such, MW Builders was entitled to coverage for damages occurring during those policy periods (1998-1999 and 1999-2000, respectively); that were caused by Portland

---

[9]    A Certificate of Liability Insurance, dated September 23, 1998, naming MW Builders as an additional insured under the 1998-1999 CGL Policy was issued to MW Builders. Because the court determines that the Liability Plus endorsement conferred additional insured status on MW Builders, it need not determine whether that Certificate of Liability Insurance was sufficient to find that MW Builders was an additional insured under that policy. See, e.g., American Casualty, 181 F.3d at 121-1123.

19 - FINDINGS AND RECOMMENDATION

Plastering's ongoing operations; and were covered by the terms of those policies.

In sum, the court finds that MW Builders was not an additional insured under SAFECO's 1996-1997 CGL Policy No. 01-CD-229396-5, but was an additional insured under SAFECO's 1997-1998 CGL Policy No. 01-CD-229396-6; 1998-1999 CGL Policy No. 01-CD-229396-7; and, 1999-2000 CGL Policy No. 01-CD-229396-8. Accordingly, SAFECO's Motion for Partial Summary Judgment against MW Builders' first and second claims for relief should be granted, in part, and denied, in part.

**B. Or. Rev. Stat. § 30.140**

Next, SAFECO argues that Or. Rev. Stat. § 30.140 precludes additional insured coverage for MW Builders under Portland Plastering's CGL policies. See Walsh Construction Co. v. Mutual of Enumclaw, 189 Or.App. 400, 76 P.3d 164 (2003), review allowed, 336 Or. 657, 92 P.3d 122 (2004). SAFECO reads the decision in Walsh to argue that both the agreement to procure insurance in Portland Plastering's Subcontract with MW Builders, and any insurance issued pursuant to that agreement, are unenforceable.

In Walsh, an Oregon subcontractor agreed to obtain liability insurance coverage, naming the general contractor as an additional insured. 189 Or.App. at 402. The subcontractor purchased a "blanket additional insured endorsement" to its general liability policy that added as insureds "any person or organization (called additional insured) whom you [the subcontractor] are required to

add as an additional insured on this policy under a written contract or agreement." Id.

During construction, one of the subcontractor's employees was injured and the employee sued the general contractor. The general contractor tendered defense of the employee's claim to the subcontractor's insurance carrier. Id. at 403. The subcontractor's carrier refused to defend, claiming that the additional insured provision was void as a matter of law because it required the subcontractor to procure insurance that would indemnify the general contractor for its own negligence. Id. The general contractor settled with the injured employee and initiated a breach of contract claim against the subcontractor's insurance carrier based on its status as an additional insured. Id. The Oregon Court of Appeal affirmed the trial court's grant of summary judgment in favor of the insurance company.

The issue on appeal was whether the insurance provisions violated Oregon Revised Statutes (ORS) § 30.140, which provides:

> (1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damages arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

> (2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to

21 - FINDINGS AND RECOMMENDATION

> property arises out of the fault of the indemnitor, or
> the fault of the indemnitor's agents, representatives or
> subcontractors.

The general contractor relied on the distinction between insurance

and indemnity. 189 Or.App. at 404. The general contractor argued

that while the statute rendered void agreements to indemnify

another party for the consequences of its own negligence, the

statute did not preclude agreements to procure insurance coverage

for others. Id.

After reviewing the language and legislative history of ORS §

30.140, the court rejected this argument, and concluded that the

additional insured provision violated ORS § 30.140. The court found

that ORS § 30.140:

> was designed to prevent parties with greater leverage in
> construction agreements (generally, owners and contractors)
> from shifting exposure for their own negligence--or the costs
> of insuring against that exposure--to other parties (generally
> subcontractors) on a 'take-it-or-leave-it' basis. Whether the
> shifting allocation of risk is accomplished directly, e.g., by
> requiring the subcontractor itself to indemnify the contractor
> for damages caused by the contractor's own negligence, or
> indirectly, e.g., by requiring the subcontractor to purchase
> additional insurance covering the contractor for the
> contractor's own negligence, the ultimate--and statutorily
> forbidden--end is the same.

Id. at 410.

The court in Walsh noted that Or. Rev. Stat. § 30.140(2),

specifically permitted a general contractor to require a

subcontractor to indemnify the general contractor for liabilities

arising from the subcontractor's own negligence. "[I]t is

undisputed that the exception described in subsection (2) does not

22 - FINDINGS AND RECOMMENDATION

apply in this case.  We are concerned solely with the construction and application of subsection (1)."  Id. at 406.

MW Builders contends that the decision in Walsh can be distinguished from the case at hand because the Subcontract here did not require Portland Plastering to obtain insurance for MW Builders' own fault or negligence and because MW Builders' is not seeking damages arising from its own fault or negligence.  Rather, MW Builders seeks defense and indemnity from SAFECO for the damages paid as a result of the fault and negligence of Portland Plastering and its sub-subcontractor, Spectra Caulking.  MW Builders maintains that the decision in Walsh does not involve the circumstances here -- coverage for the general contractor under a subcontractor's insurance policy for subcontractor's own fault or negligence.

The court agrees.  Neither Or. Rev. Stat. § 30.140(1) nor the decision in Walsh provides a basis for summary judgment here on the issue of whether MW Builders was an additional insured under the SAFECO CGL policies at issue.  MW Builders is not precluded, under Oregon law, from arguing that it was entitled to coverage, as an additional insured, under Portland Plastering's policy for covered damages arising from the fault or negligence of Portland Plastering.  Conversely, of course, MW Builders may not recover under the SAFECO CGL policies for any damages that resulted from its own fault or negligence.

**CONCLUSION**

Based on the foregoing, SAFECO's Motion for Partial Summary Judgment (doc. #48) should be GRANTED, in part, and DENIED, in part.

DATED this  14  day of September 2004

  /s/ Donald C. Ashmanskas  
DONALD C. ASHMANSKAS  
United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation (F&R) will be referred to a United States District Judge for review once all summary judgment motions presently filed in this matter are resolved. Accordingly, the filing of objections to this F&R is stayed pending the court's determination of all remaining summary judgment motions. The court will notify the parties of the objections deadlines at that time.

24 - FINDINGS AND RECOMMENDATION