IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MW BUILDERS, INC., a Missouri
corporation, and GREAT
AMERICAN ALLIANCE INSURANCE
COMPANY, an Ohio corporation,

        Plaintiffs,

    v.

                           Civil No. 02-1578-AS

SAFECO INSURANCE COMPANY OF     FINDINGS AND RECOMMENDATION
AMERICA, a Washington
corporation; SAFECO INSURANCE
COMPANY OF OREGON, an Oregon
corporation; AMERICAN STATES
INSURANCE COMPANY, an Indiana
corporation; ELLIOT, POWELL,
BADEN & BAKER, INC., an Oregon
company; LAWRENCE REX ESTATE,
d/b/a REX & COMPANY (by and
through its personal
representative, L.V. Rex); and
LAWRENCE REX TRUST (by and
through its trustee, L.V. Rex),

        Defendants.

_____

ASHMANSKAS, Magistrate Judge:

**PENDING MOTIONS**

Presently before the court are five summary judgment motions. They are as follows:  Defendant Elliott, Powell, Baden & Baker's Motion for Summary Judgment (doc #67); Motion for Summary Judgment filed by Rex Defendants (doc #72); MW Builders' Motion for Summary Judgment Against Defendants Elliott, Powell, Baden & Baker and Rex & Company (doc #76); MW Builders' Motion for Summary Judgment Against Defendants SAFECO and American States (doc #80); and SAFECO's Second Motion for Summary Judgment (doc #85).  Oral argument was heard on all motions and for the reasons that follow, MW Builders' Motion for Summary Judgment Against Defendants SAFECO and American States should be granted, in part, and denied, in part; and SAFECO's Second Motion for Summary Judgment should be granted in part, and denied, in part. [1]

**PROCEDURAL BACKGROUND**

Plaintiffs, MW Builders, Inc. and Great American Alliance Insurance Company (collectively MW Builders), filed a complaint against various named defendants seeking contribution, indemnification and defense costs.  The named defendants are as follows: Safeco Insurance Company of America, Safeco Insurance

---

[1]     This Findings and Recommendation (F&R) resolves SAFECO's and MW Builders' cross-motions for summary judgment (docs. #80, #85).  Previously, the court decided SAFECO's Motion for Partial Summary Judgment (doc. #48).  A decision on the remaining motions -- MW Builders' and Elliot's and Rex's cross-motions for summary judgment (docs. #76, #67, #72) -- will follow in a subsequent F&R.

Company of Oregon, American States Insurance Company (collectively SAFECO); Elliott, Powell, Baden & Baker, Inc. (Elliott); and Rex & Company, Lawrence Rex Estate and Lawrence Rex Trust (collectively Rex). SAFECO defendants filed a third-party complaint against St. Paul Fire & Marine Insurance seeking contribution for any liability insurance coverage for the construction defect claims arising from the Candlewood Suites Hotel project.

MW Builders asserted ten claims for relief, including: (1) declaratory judgment of coverage (MW Builders as insured); (2) breach of contract (MW Builders as insured); (3) declaratory judgment of coverage (Portland Plastering as insured); (4) breach of contract (Portland Plastering as insured); (5) breach of the duty of good faith and fair dealing; (6) negligence by Elliott; (7) breach of third-party contract by Elliott; (8) misrepresentation by Elliott; (9) estoppel; and (10) contribution and indemnity. Subsequently, on a motion filed by Rex, the court dismissed counts one through five, nine and ten against Rex.

## FACTUAL BACKGROUND

In the mid-1990s, MW Builders entered into an agreement with Candlewood Hotel Company, LLC., to construct the Candlewood Suites Hotel in Hillsboro, Oregon (Hotel). The building plans that were prepared for MW Builders specified that the exterior of the Hotel was to be clad with an exterior insulation and finishing system (EIFS). MW Builders subcontracted with Gary Thompson, dba Portland

Plastering, to perform specific construction work, including installation of the EIFS on the building (Subcontract). The Subcontract expressly required Portland Plastering to obtain and provide insurance coverage, including general liability insurance and excess (umbrella) insurance coverage, for the benefit of MW Builders and naming MW Builders as an additional insured on the policy as follows:

> 12.2 Such insurance shall include the following terms and conditions:
>
> . . . .
>
> (g) <u>Additional Insureds</u>. Subcontractor furnished insurance (except Workers' Compensation Insurance) shall name MW and all their assigns, subsidiaries and affiliates as additional insureds as their respective interests may appear.
>
> (h) <u>Insurance Primary</u>. All policies of insurance provided pursuant to this article shall be written as primary policies, not contributing with and not in excess of the coverage of the indemnities.

### *The CGL Policies Issued by SAFECO*

During the one-year period beginning on August 17, 1996, and for three renewals, Gary Thompson, dba Portland Plastering, was the named insured under an insurance policy issued by SAFECO,[2] which provided commercial general liability coverage (CGL)[3]. The

---

[2] The insurance was actually purchased from American States Insurance Co. However, American States was subsequently purchased by SAFECO and SAFECO was the insurance company that dealt with MW Builders' claims.

[3] The policy numbers and policy periods are as follows: Policy 01-CD-229396-5, with an effective date between August 17,

declarations for the 1996-1997 CGL Policy and the 1997-1998 CGL

Policy do not identify MW Builders as an insured, nor is MW

Builders identified as an insured in any endorsement to those

policies. The liability part of both policies extended coverage to

any "Named Insured shown in the Declarations, and any other person

or organization qualifying as a Named Insured under this policy."

The liability coverage also extended to any "inured," which the

policies define as "any person or organization qualifying as such

under WHO IS AN INSURED (SECTION II)."

However, the 1997-1998 CGL Policy issued by SAFECO did include

an Additional Insured endorsement (Form CG 20 33). The endorsement

provided that SAFECO would automatically add a party as an

additional insured when Portland Plastering entered into a contract

requiring such insurance. Form CG 20 33 provided:

> ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS -
> AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH
> YOU
>
> This endorsement modifies insurance provided under the
> following:
>
> Who is An Insured (Section II) is amended to include as an
> insured any person or organization for whom you are performing
> operations when you and such person or organization have

1996, and August 17, 1997 (1996-1997 CGL Policy); Policy 01-CD-
229396-6, with an effective date between August 17, 1997, and
August 17, 1998 (1997-1998 CGL Policy); Policy 01-CD-229396-7,
with an effective date between August 17, 1998, and August 17,
1999 (1998-1999 CGL Policy); and Policy 01-CD-229396-8, with an
effective date between August 17, 1999, and August 17, 2000
(1999-2000 CGL Policy).

agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

The two renewal policies issued by SAFECO to Portland Plastering after August 17, 1998, i.e., 1998-1999 CGL Policy and 1999-2000 CGL Policy, included a Liability Plus endorsement (Form CG 76 35). Form 76 35 provided, in part:

> 5.  Any person or organization for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following additional provisions:
>
>     a.  The contract, agreement or permit must be in effect during the policy period shown in the Declarations, and must have been executed prior to the "bodily injury," "property damage, "personal injury," or advertising injury."
>
>     b.  The person or organization added as an insured by this endorsement is an insured only with respect to liability arising out of:
>
>         . . . .
>
>     (2) Your ongoing operations for that insured, whether the work is performed by you or for you . . . .

### *The Certificates of Liability Insurance*

On January 29, 1997, Rex issued a Certificate of Liability Insurance that identified MW Builders as a "Certificate Holder" under Portland Plastering's 1996-1997 CGL Policy. The Certificate did not identify MW Builders as an additional insured under that 1996-1997 CGL Policy. On February 5, 1997, Rex issued a

Certificate of Liability Insurance that identified MW Builders as
an additional insured on Portland Plastering's auto liability
coverage during that same period.

On July 13, 1998, and on September 23, 1998, Elliott issued
Certificates of Liability Insurance for the SAFECO 1996-1997 CGL
Policy and the 1998-1999 CGL Policy.  The Certificate dated July
13, 1998, reflected that Portland Plastering was insured under
policy number 01CD22939650 during the one-year period beginning on
August 17, 1996, and provided that "MW BUILDERS, INC IS NAMED AS
ADDITIONAL INSURED AS RESPECTS THEIR INTEREST."[4]  The Certificate
dated September 23, 1998, reflects that Portland Plastering was
insured under policy number 01CD22939660[5] during the one-year
period beginning August 17, 1998, and provided that "CERTIFICATE
HOLDER IS NAMED AS ADDITIONAL INSURED AS RESPECTS THEIR INTEREST."
Both certificates included the following terms:

_____

[4]     The Certificate of Liability Insurance on the 1996-1997
CGL Policy issued by Elliott on July 13, 1998, was issued almost
one year after the 1996-1997 CGL Policy period had expired.

[5]     The court notes that the "Policy Effective Date" on
this Certificate of Liability Insurance is listed as 8/17/98-
8/17/99; and the policy limits set forth in the Certificate
issued September 23, 1998, reflect the terms of the corresponding
1998-1999 CGL Policy.  However, the Certificate states that it
was issued as proof of Policy No. 01CD22939660, which was in
effect between 8/17/97-8/17/98.   This discrepancy is not
explained by either party and, as such, the court will assume
that Certificate of Liability Insurance issued on September 23,
1998, was for the 1998-1999 CGL Policy No. 01CD22939670 and that
the policy number listed in the Certificate of Liability
Insurance is in error.

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND
CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS

CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE
AFFORDED BY THE POLICIES BELOW.

. . . .

NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY
CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS
CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE
AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL
THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES

Further, each Portland Plastering's CGL Policies with SAFECO
provided, among other things, that the policy terms "can be amended
or waived only by endorsement issued by [American States] and made
a part of this policy."

### *Water Damage to the Hotel and Subsequent Litigation*

Construction began on the Hotel project in 1996 and was
substantially completed by June 1997. After work was completed,
the new owners, Larkspur Hospitality Company (Larkspur), became
aware of substantial water intrusion and damage to the building.
MW Builders continued to work with Larkspur to correct the water
leakage problem and requested subcontractors, including Portland
Plastering, to correct various construction issues. Portland
Plastering performed repair work at the Hotel during September
1998. Despite the efforts to repair bulging and cracked EIFS
material, it became evident that the work was faulty and was
leading to wide-spread water damage at the Hotel.

Larkspur made a claim for water damage to the Hotel and sought AAA arbitration. Larkspur alleged negligence, breach of contract, breach of warranty, indemnification and products liability, arising out of the alleged damage caused by moisture and water intrusion into the Hotel. Larkspur sought damages for the cost to repair rot and damage to the hotel plus consequential damages and attorney fees in the range of $2,538,874.07 to $2,886,426.02. MW Builders denied liability and affirmatively asserted that the damages to the Hotel was the primary fault of Portland Plastering.

MW Builders tendered the defense and sought indemnity of Larkspur's claim from Portland Plastering and SAFECO. SAFECO denied the tenders and declined to defend MW Builders or provide indemnity on behalf of MW Builders or Portland Plastering. MW Builders filed a separate demand for arbitration against Portland Plastering alleging that Portland Plastering failed to properly install the EIFS and seal the building and that Portland Plastering's fault and omissions led to damages throughout the complex.

In December 2001, Portland Plastering filed for protection under Chapter 7 of the Bankruptcy Code. On February 22, 2002, Larkspur and MW Builders settled the claims against MW Builders for $2,000,000. Following the settlement, MW Builders was granted an order lifting the stay to permit MW Builders to pursue its claims against Portland Plastering to the extent of its insurance

coverage.  MW Builders proceeded to arbitration against Portland Plastering in June 2003, and James Knoll, the arbitrator appointed to resolve the dispute, determined that the fault of Portland Plastering caused 31% of the damages sustained by the Hotel.  Knoll awarded $620,000 in damages (31% of the $2,000,000 settlement)(Settlement Expenses), $70,934.30 in defense costs for Portland Plastering's obligation to defend MW Builders in the underlying claim brought by Larkspur (Defense Costs), and $214,610 in attorneys' fees and costs in pursuing the claims against Portland Plastering (Prevailing Party Fees).

The Multnomah County Circuit Court entered judgment upon the arbitration award on October 29, 2003.  MW Builders requested SAFECO to pay the arbitrator's award, and SAFECO declined.  To date, SAFECO has not paid any portion of the judgment against Portland Plastering.

## LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). If the moving party shows that there are genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present

a genuine issue of material fact.  <u>United Steelworkers of America</u> <u>v. Phelps Dodge</u>, 865 F.2d 1539, 1542 (9th Cir. 1989).  The substantive law governing a claim determines whether a fact is material.  <u>T.W. Elec. Service v. Pacific Elec. Contractors</u>, 809 F.2d 626, 630 (9th Cir. 1987).  Reasonable doubts as to the existence of a material fact issue are resolved against the moving party.  <u>Id</u>. at 631.  Inferences drawn from facts are viewed in the light most favorable to the non-moving party.  <u>Id</u>. at 630- 31.

## DISCUSSION

## I.  SAFECO and MW Builders' Cross-Motions for Summary Judgment

SAFECO's Second Motion for Summary Judgment seeks judgment against each of MW Builders' claims, separately and collectively. Specifically, SAFECO argues that: (1) no portion of the arbitration award against Portland Plastering, its insured, in the amount of $905,544.30 is covered by the CGL Policies issued by SAFECO; and (2) nor do those CGL Policies provide coverage for MW Builders as an additional insured.[6]

---

[6]  The court notes that in its response to MW Builders' Motion for Summary Judgment, SAFECO raises for the first time in this litigation issues regarding real and necessary parties in interest.  MW Builders objects to SAFECO raising these issues for the first time in a response brief and asks the court to decline to consider them.  Alternatively, MW Builders asserts the issues were not timely raised and are meritless.  Because this matter was raised for the fist time and only in a response brief to the opposing parties' summary judgment motion, the court will reserve ruling at this time.  At the parties request, the court will set a briefing schedule to specifically address the issue of the proper parties to this litigation.

Conversely, MW Builders' Motion for Summary Judgment Against Defendants SAFECO and American States seeks a judgment for the entire amount of Knoll's (the arbitrator) award against Portland Plastering. MW Builders contends that Knoll determined that Portland Plastering is liable for the improper application of the EIFS and the caulking of the EIFS around the penetrations. Further, the improper installation and sealing work damaged and rotted framing members, sheathing, drywall, insulation, joists, and other building components. Thus, according to MW Builders, both fault and causation were established through arbitration. MW Builders maintains that SAFECO is liable for the entire amount of the arbitration award pursuant to the "products-completed operations hazard" provision and the "insured contracts" provision. In addition, MW Builders maintains that SAFECO must provide coverage for it as an additional insured under the SAFECO CGL Policies.[7]

---

[7] The court previously determined that MW Builders was not an additional insured under SAFECO's 1996-1997 CGL Policy No. 01-CD-229396-5, but was an additional insured under SAFECO's 1997-1998 CGL Policy No. 01-CD-229396-6; 1998-1999 CGL Policy No. 01-CD-229396-7; and, 1999-2000 CGL Policy No. 01-CD-229396-8. As such, MW Builders was entitled to coverage for damages occurring during those policy periods (1998-1999 and 1999-2000, respectively); that were caused by Portland Plastering's ongoing operations; and were covered by the terms of those policies. (MW Builders' status as an additional insured would end upon the completion of Portland Plasterings' work.)

## A.    Interpreting Insurance Contracts

To determine whether the arbitration award against Portland Plastering is covered by the SAFECO CGL Policies, the court must interpret the language of those policies.  The parties agree that Oregon law governs their rights and responsibilities under the CGL Policies.  See, e.g., Home Indem. Co. v. Stimson Lumber Co., 229 F.Supp.2d 1075, 1090 n.4 (D.Or. 2001).  Under Oregon law, the interpretation of an insurance policy ordinarily is a question of law for the court.  See, e.g., Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992).  The exception is that if the language in the policy is ambiguous and evidence is properly admitted to show meaning, the question becomes one of fact.  Libby Creek Lodging, Inc. v. Johnson, 225 Or. 336, 358 P.2d 491, 493 (1960).  Construction of insurance contracts requires ascertaining the parties' intent.  Mcleod v. Tecorp International, Ltd., 318 Or. 208, 215, 865 P.2d 1283 (1993).  In doing so, the terms of the contract are presumed to have been incorporated and used in their primary and general meaning.  Or. Rev. Stat. § 42.250.  Finally, the insurer has the burden of drafting exclusionary clauses that are clear and unambiguous.  N. Pac. Ins. Co. v. Hamilton, 332 Or. 20, 22 P.3d 739, 744 (2001).  Therefore, any ambiguity in an exclusionary clause should be strictly construed against the insurer.  Stanford v. Am. Guaranty Life Ins. Co., 280 Or. 525, 571 P.2d 909, 911 (1977).

**B.    Provisions of the CGL Policies**

In the coverage portion of the CGL Policies SAFECO agreed to pay as follows:

SECTION I - COVERAGES

COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement.

      a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

      b.    This insurance applies to . . . "property damage" only if:

      (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The . . . "property damage" occurs during the policy period.

Thus, the court must determine whether the claims in the underlying arbitration proceeding fall within the meaning of property damage caused by an occurrence and whether any exclusion would apply to bar coverage, i.e., a contractual liability exclusion or faulty work exclusion.

SAFECO maintains that it has no duty to pay because no component of the arbitration award satisfies all of the CGL policy requirements -- obligated to pay damages, because of property damage, that materialized during the policy term, that was caused by an "occurrence," and there are no exclusions.  According to SAFECO, MW Builders' contractual indemnity claim for the Settlement

Expenses is not covered because that claim does not involve "property damage" or an "occurrence," and because at least one exclusion applies. Rather, SAFECO maintains that the arbitration award against Portland Plastering is based solely on the indemnity provision set forth in the Subcontract. The arbitrator concluded that the basis for the Settlement Expenses and Defense Costs was the indemnity clause in paragraph 10.1 of the Subcontract. The arbitrator explained that "[t]his [indemnity] clause requires Portland Plastering to indemnify and defend MW Builders for claims made against MW Builders on account of Portland Plastering's work." Further, the arbitrator explained that the basis for the Prevailing Party Fees was found in paragraph 15.6 of the Subcontract.

### 1. Occurrence

The SAFECO CGL policy defines the term "occurrence" an "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the term "accident" is not defined in the CGL policy, the Oregon Supreme Court has held that the term "accident" has a tortious connotation. <u>Kisle Fire v. St. Paul & Marine Ins.</u>, 262 Or. 1, 6-7, 495 P.2d 198 (1972). Oregon courts have determined that damage resulting from a breach of contract is not an accident within the meaning of a commercial liability policy. <u>See</u>, <u>e.g.</u>, <u>id</u>. ("Damage solely caused by failure to perform a contract is not recoverable in tort."); <u>accord</u> <u>Oak Crest Construction Co. v. Austin Mutual Insurance Co.</u>, 329 Or. 620, 626-627, 998 P.2d 1254 (2000)(Costs incurred by

general contractor to remove and replace subcontractor's painting work on cabinets and woodwork was not covered under a CGL policy as the damages did not arise from an "accident."); <u>see</u> <u>also</u> <u>California Insurance Co. v. Stimson Lumber Co.</u>, 2004 WL 1173185 *6 (D.Or. 2004).

Although the Oregon Supreme Court has held that poor workmanship is not an "occurrence" and therefore, no coverage exists, it has done so in instances where the only damage suffered was to the insured's property and not that of a third-party. <u>See</u>, <u>e.g.</u>, <u>Oak Crest</u>, 329 Or at 627, 998 P.2d 1254; <u>see</u> <u>also</u> <u>Stimson Lumber</u>, 2004 WL 173185 *7-8. Courts holding that faulty work is not an occurrence are unwilling to transform a CGL policy into a warranty or performance bond for a contractor's workmanship. <u>See</u> <u>Stimson Lumber</u>, 2004 WL 1173185 *6. The Ninth Circuit explained the issue as follows:

> General liability policies . . . are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather liability coverage comes into play when the insured's defective materials or work *cause injury to property other than the insured's own work or products.*

<u>Anthem Elec., Inc. v. Pac. Employers Ins. Co.</u>, 302 F.3d 1049, 1057 (9th Cir. 2002)(emphasis in original)(quoting <u>Maryland Cas. Co. v. Reeder</u>, 221 Cal.App.3d 961, 967, 270 Cal.Rptr. 719 (1990)); <u>accord</u> <u>Burlington Insurance Co. v. Oceanic Design & Construction, Inc.</u>, 383 F.3d 940, 948-949 (9th Cir. 2004). The court reasoned that

"[a]llowing recovery for disputes between parties in a contractual relationship over the quality of work performed would convert [a] CGL policy into a professional liability policy or a performance bond." Burlington Insurance Co., 383 F.3d at 949.

The Oregon Supreme Court has determined, however, that there are instances in which the negligent performance of a contract will qualify as being caused by an accident. See, e.g., Kisle, 262 Or. at 6-7, 495 P.2d 1198 ("We find there is a significant distinction between negligent performance of a contract and a complete failure of timely performance."), Oak Crest, 329 Or. at 628-629, 998 P.2d 1254 (Plaintiff might be liable in tort for "other damage" that qualified as an "accident" within the meaning of a CGL policy.).

Consistent with the holding of the Oregon Supreme Court, this court determined in Stimson Lumber that:

> Absent language to the contrary, liability policies are not a warranty or performance bond for a contractor's workmanship. . . . Liability policies are instead meant to insure against injury to persons and damage to other property caused by inferior workmanship or products. . . . The risk being insured is that of tort liability for physical damages to others, and not contractual liability because the insured's product is not that for which the damaged person bargained.

2004 WL 173185 *6 (citations omitted).

Thus, a CGL policy is not intended to pay costs associated with repairing or replacing an insured's defective work and products which are purely economic losses; it is, however, intended to provide coverage for injury or damage to the person or property of others. Accordingly, the court finds that when an insured's

defective workmanship results in damage to the property of others, an "accident" exists within the meaning of the standard CGL policy, such the SAFECO CGL Policies at issue here.

The parties agree that the Hotel suffered water intrusion and damage. Because of the faulty EIFS installation water entered the hotel and damaged the framing members, interior wall spaces, sheathing, drywall, insulation, joists and other building components. Arbitrator Knoll found that Portland Plastering's defective and improper EIFS caused the water infiltration damages to the Hotel between 1997 and 2000. Specifically, Knoll stated:

> Portland Plastering did proceed and apply the EIFS, despite knowing in many cases its installation of the EIFS was wrong and would cause problems down the road and despite its responsibilities under its contract with MW Builders. . . . Additionally, it cut the v-grooves to deeply, failed to install properly the mesh, base coat and finish coat in some areas and failed to properly caulk the penetrations contrary to the STO installation specifications. . . . In particular when caulking the PTAC units, Portland Plastering's subcontractor failed to install the correct or any caulk joints.
>
> . . . .
>
> Finally, the failure of Portland Plastering to install properly the EIFS and caulking and its failure to submit written concerns as required by its contract also contributed to the damage.

Nor do the parties dispute that the only manner in which to repair the rot and deterioration to the Hotel caused by the water intrusion was to remove all of the EIFS cladding and to identify and replace rotted framing and structural components.

Thus, it is undisputed there was other damage to the Hotel caused by the improperly installed EIFS, and costs associated with repairing that damage, that went beyond replacing the defective EIFS. This other damage to the Hotel property -- beyond the cost of replacing the defective EIFS -- would constitute an "occurrence" under the SAFECO CGL Policies. See Anthem Elec., Inc. 302 F.3d at 1057 ("[L]iability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products."); see also Wyoming Sawmills, Inc. v. Transp. Ins. Co., 282 Or. 401, 406, 578 P.2d 1253, 1256 (1978)(CGL policy may cover labor costs for repair of other damage to the contractor's building caused by defective work.); accord Stimson Lumber, 2004 WL 173185 *6, 8.

**2. Property Damage**

In addition to being caused by an "occurrence," the injury must constitute property damage or bodily injury. The parties agree that there was no bodily injury; thus, the issue is whether there was property damage. The SAFECO CGL Policies define the term "property damage" as:

    a.  Physical injury to tangible property, including all
        resulting loss of use of that property. All such loss of
        use shall be deemed to occur at the time of the physical
        injury that caused it; or

    b.  Loss of use of tangible property that is not physically
        injured. All such loss of use shall be deemed to occur
        at the time of the "occurrence" that caused it.

SAFECO contends that the indemnity award is for reimbursement of the money paid by MW Builders to Larkspur and, therefore, MW Builders' claim against Portland Plastering involved purely economic damages, not property damage. See, e.g., Huff v. Shiomi, 73 Or.App. 605, 611, 699 P.2d 1178 (1985)(describing indemnity claim as claim for economic loss); Allstate Ins. Co. v. Tenant Screening Services, Inc., 140 Or.App. 41, 47, 914 P.2d 16 (1996)(same). Relying on Holman Erection Co., Inc. v. Employers Ins. of Wausau, 142 Or. App. 224, 920 P.2d 1125 (1996), SAFECO maintains that a claim, such as the one here, to recover an economic injury arising out of a remote injury to a third person cannot trigger liability coverage. Thus, SAFECO argues that even if Larkspur's claim against MW Builders involved "property damage," MW Builders claim against Portland Plastering was for contractual indemnity and did not involve "property damage" under Oregon law.

Alternatively, MW Builders maintains that the undisputed evidence demonstrates that Portland Plastering's faulty installation of EIFS caused damage to the entire hotel thereby diminishing its value. Relying on Dewitt Const. Inc. V. Charter Oak Fire Ins. Co., 307 F.3d 1127 (9th Cir. 2002), MW Builders argues that property damage arising from faulty installation occurs when incorporation of the defective work diminishes the value of the building and that the allegations here provide "the essence of a claim for property damage."

Plaintiff in Dewitt alleged three types of property damage:
(1) damage to the construction site by impaling it with unremovable
obstacles (faulty work by plaintiff), (2) damage to the work of
other subcontractors that had to be removed and reconstructed due
to plaintiff's negligence, and (3) damage to buried mechanical
piping and site work while moving equipment to replace the under-
strength piles. Dewitt, 307 F.3d at 1133. In deciding whether the
three types of property damage alleged were covered by the
definition of "property damage"[8] set forth in plaintiff's CGL
policy, the Ninth Circuit determined as follows:

> We conclude that the alleged damage to the construction site
> caused by [plaintiff] impaling it with unremovable piles is
> not 'property damage' under the policies. For faulty
> workmanship to give rise to property damage, there must be
> property damage separate from the defective product itself.
>
> . . . .
>
> Because [plaintiff] does not allege physical injury apart from
> the defective piles themselves, there is no issue of material
> fact in dispute.
>
> . . . .
>
> We turn next to whether the alleged damage to the work of
> other subcontractors which had to be removed and destroyed as
> a result of [plaintiff's] installation of defective piles, is
> property damage within the scope of the policies. We find
> that it is.
>
> . . . .

--------

[8] The term "property damage" is defined in the CGL policy
in Dewitt as (a) "physical injury to tangible property, including
all resulting loss of use of that property" or (b) "loss of use
of tangible property that is not physically injured." Dewitt,
307 F.3d at 1133.

> We also find that the alleged damage to the buried mechanical
> and site work caused by [plaintiff's] movement of heavy
> equipment was "physical injury to tangible property" and thus
> constituted property damage within the scope of the policies.

Dewitt, 307 F.3d at 1133-1134; see also IDC Construction, LLC v.

Admiral Insurance Co., 339 F.Supp.2d 1342, 1350-1351 (S.D.Fla.

2004)(Claims arise from "property damage" when water intrusion

caused, in part, by improperly installed EIFS, damaged property

other than the improperly constructed work.).  In accordance with

these decisions, the court finds that the damage to the Hotel,

other than the faulty work, caused by the water intrusion is

covered "property damage" under the SAFECO CGL Policies.

Moreover, although SAFECO insists that the decision in Holman

is on point here, the court disagrees.  In Holman a construction

subcontractor brought an action against its CGL and workers'

compensation insurer, alleging that insurer breached its duty to

defend the subcontractor in two separate lawsuits.  142 Or.App. at

226.  First, insurer declined to defend a personal injury action

filed by the subcontractor's employee against the general

contractor on one of the subcontractor's projects.  Id.  Second,

the insurer also breached its duty to defend the subcontractor in

a general contractor's action against it seeking damages for

subcontractor's failure to name general contractor as additional

insured pursuant to the subcontract.  Id.  The parties' subcontract

included an indemnity provision under which the subcontractor would

indemnify contractor from any liability arising from injuries to subcontractor's employees.  <u>Id</u>. at 227-228.

With respect to this second lawsuit, subcontractor argued that the insurer had a duty to defend based on its failure to procure insurance for the contractor.  Subcontractor reasoned that when contractor tendered the defense of the first lawsuit to the subcontractor under the indemnity agreement in the subcontract, the insurer had a duty to defend.  <u>Id</u>. at 231.  Contractor's claimed damages for breach of contract; namely, subcontractor's failure to obtain insurance as it had promised to do in the subcontract caused contractor to defend and pay claims that should have been insured. <u>Id</u>.  The Oregon Court of Appeals held that, among other things, the insurer had no duty to defend subcontractor in the second suit, since general contractor claimed damages for breach of contract while insurer's policies only provided coverage for bodily injury and property damage.  <u>Id</u>.  Rather, the subcontractor's failure to procure insurance to protect the contractor resulted only in a breach of the agreement between the parties.  <u>Id</u>. at 231 n.8.

Unlike plaintiff in <u>Holman</u> who alleged only that the insurer had a duty to defend damages arising from a breach of contract, MW Builders alleged here that SAFECO must indemnify it because the damages arose from moisture and water intrusion into the Hotel, i.e., property damage, caused by Portland Plastering, its insured. For example, MW Builders' complaint alleged:

After the hotel was built, Larkspur made claims against MW
Builders, alleging that the Candlewood Suites had been and was
being damaged by moisture and water intrusion into the hotel.
[MW Builders] tendered defense and indemnity of the claims to
responsible third parties, including Portland Plastering,
based on the terms of the subcontract. [MW Builders] also
specifically demanded that Portland Plastering immediately
notify its insurer of the claim on its own behalf and on
behalf of MW Builders as an additional insured.

. . . .

[MW Builders] paid monies to defend and to settle the claims
asserted by Larkspur based upon work performed by Portland

Plastering. [MW Builders] seek[s] to recover those damages in
this case.

Amended Complaint (First) ¶¶ 3.8, 3.15.

SAFECO declined to defend or indemnify MW Builders in the

Larkspur action pursuant to the CGL Policies issued to Portland

Plastering, including the 1997-1998 CGL Policy in which MW Builders

was covered as an additional insured for Portland Plastering's

ongoing operations. Subsequently, the Larkspur dispute was settled

and MW Builders sought recovery of Portland Plastering's share of

liability through arbitration. It is undisputed that Portland

Plastering was liable for some of the damages to the Hotel caused

by the water intrusion resulting from its defective work. SAFECO

cannot now argue as a result of the Larkspur settlement and

subsequent arbitration that MW Builders seeks recovery only for

economic damages and not property damages. Because the complaint

alleged that Portland Plastering's faulty installation of EIFS

caused damage to the entire Hotel, thereby diminishing its value,

the court concludes that MW Builders' claims seek damages arising from covered property damage, excluding the faulty work. <u>See</u>, <u>e.g.</u>, <u>Dewitt</u>, 307 F.3d at 1133-1134; <u>IDC Construction, LLC</u>, 339 F.Supp.2d at 1350-1351.

**B.   Exclusion in the SAFECO CGL Policies**

**1.   Contractual Liability Exclusion**

In an alternative argument in support of summary judgment on MW Builders' complaint, SAFECO contends that it is entitled to summary judgment in this case because contract-based claims are excluded by the CGL Policy. SAFECO explains that even if MW Builders' claim involved "property damage" and an "occurrence," Portland Plastering's liability coverage is subject to a "contractual liability" exclusion which bars coverage for "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." This exclusion operates to deny coverage when the insured assumes responsibility for the conduct of a third-party. SAFECO argues that MW Builders' attempt to recover against Portland Plastering for the Larkspur settlement is derivative of the contractual relationship between MW Builders and Portland Plastering and is therefore outside the scope of the SAFECO CGL Policies' coverage. (The arbitrator concluded that Portland Plastering was contractually liable for the Settlement Expenses.)

MW Builders insists that the contractual liability exclusion does not apply here and, in fact, it is entitled to coverage

because the Subcontract between the parties is an "insured contract." MW Builders explains that the SAFECO CGL Policies provide coverage for liability assumed in insured contracts. Specifically, SAFECO agreed to provide liability insurance for damages:

> [A]ssumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses are deemed to be damages because of "bodily injury" or "property damage," provided:
>
> > (a) liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and
> >
> > (b) such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

The term "insured contract" is defined by the SAFECO CGL policy to mean:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for . . . "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Portland Plastering's Subcontract expressly requires that it indemnify MW Builders as follows:

> Subcontractor agrees to protect, indemnify, defend and hold harmless MW and Owner from and against (I) all claims, causes of action, liabilities, obligations, demands, costs and expenses arising out of . . . damage to property alleged to have been caused by an act or omission of Subcontractor . . . or growing out of or incidental, directly or indirectly, to

the performance of the Subcontract regardless of how
such . . . damage be caused, and (ii) all damages, judgments
and expenses caused by any act or omission (whether negligent
or not) of Subcontractor or anyone who performs Work in the
prosecution of the Subcontract. Subcontractor's duty to
indemnify and defend shall exist even if the damages sought
are alleged to have been caused in part by the negligence or
fault of MW, its employees, agents or officers.

SAFECO responds that this reading of the "insured contract"

exception is insupportable because it effectively extends coverage

for tort liability in contravention of Oregon law. See, e.g.,

Jones v. Emerald Pacific Homes, Inc., 188 Or. App. 471, 71 P.3d 574

(2003); International Paper Co. V. TCR Northwest 1993, Inc., et

al., 2004 WL 1173182 (D.Or. 2004). In Jones, the Oregon Court of

Appeals considered a building contractor's potential liability to

a client, including the circumstances under which a breach of

contract can give rise to tort liability. Plaintiff homeowners, in

Jones, brought claims for breach of contract and negligence against

the contractor that built a house for them. Plaintiffs alleged

that poor workmanship for which the contractor was responsible

caused water leaks that damaged the house. 188 Or.App. at 473.

The Oregon appellate court affirmed the trial court's dismissal of

plaintiff's negligence claim. The appellate court noted that

> [A] tort action between parties to a contract can arise when
> the plaintiff's damages result from breach of an obligation
> that is independent of the terms of the contract, that is, an
> obligation that the law imposes on the defendant because of
> his or her relationship to the plaintiff, regardless of the
> terms of the contract between them.

Id. at 476 (citations omitted). The court in Jones concluded that

parties to a contract have the kind of "special relationship" that

imposes a "heightened duty of care" and creates potential tort liability only "when one party delegates to the other the authority to make important decisions with the understanding that the authority is to be exercised on behalf of and for the benefit of the authorizer." <u>Id</u>. at 478. In the absence of any other evidence that the parties were in a relationship that would support the imposition of tort liability, the court in Jones concluded that dismissal of the tort claim was required. <u>Id</u>.

In <u>International Paper Co.</u>, 2004 WL 1173182, this court dismissed a group of subcontractors from an action in which an exterior siding manufacturer sought indemnification and contribution from both general contractors and subcontractors who worked on several apartment complexes that were besieged by construction defects. The question for the court in <u>International Paper Co.</u>, was whether there was evidence in the record that the subcontractors could be liable in tort to the project owners with whom they had no contractual relationship. The court noted that:

> Ordinarily, an owner who is dissatisfied with the construction brings an action against the general contractor, asserting breach of contract or breach of warranty. A general contractor who is found liable in turn brings an action against the subcontractor that performed the defective work, based upon the contract between the general contractor and the subcontractor.

<u>Id</u>. at *4 n.5. The court found there was no special relationship between the building owners and the subcontractors that would support potential tort liability for the negligent construction.

The decision in <u>International Paper</u> considered subcontractors' liability to owners for negligent construction in the absence a contract between those parties. Here, Portland Plastering, the subcontractor, is liable to MW Builders, the contractor, pursuant to the indemnification agreement in the Subcontract that obligates Portland Plastering to indemnify MW Builders for claims made against MW Builders on account of Portland Plastering's work. The basic grant of insurance in the SAFECO CGL Policies does not exclude coverage in cases in which the insured is subjected to liability as a result of its contractual obligation to a third party pursuant to an insured contract. Rather, under the insuring language quoted above, Portland Plastering has a duty to defend any suit seeking damages for bodily injury or property damage that the insured has (or will have) a legal obligation to pay. "Suit" is not limited to a suit against the insured; rather, it includes any suit alleging damages to which the SAFECO insurance applies.

Moreover, the court finds that SAFECO's reasoning misconstrues the nature of indemnity obligations: "The assumption by contract of the liability of another is distinct conceptually from the breach of one's contract with another. Liability on the part of the insured for the former is triggered by contractual performance; for the latter liability is triggered by contractual breach." <u>Musgrove v. Southland Corp.</u>, 898 F.2d 1041, 1044 (5th Cir. 1990). Contractual liability coverage provisions are specifically designed to provide coverage for indemnification actions, notwithstanding

the fact that the policy may offer no coverage for breach of a contractual duty. Id.; see also White Mountain Cable Constr. Co. v. Transamerica Ins. Co., 137 N.H. 478, 631 A.2d 907 (1993) (The insured had entered into an indemnity agreement and hence was entitled to a defense by the insurer.); Aetna Casualty & Surety Co. v. Spancrete, 726 F.Supp. 204, 207 (N.D.Ill. 1989)(Contractual liability coverage was inapplicable since the third-party action was based upon breach of contract.).

On its face, the SAFECO CGL Policies provided coverage. Under the Subcontract between Portland Plastering and MW Builders, Portland Plastering agreed to indemnify MW Builders and hold it harmless for third-party claims arising from its own conduct. Portland Plastering was contractually obligated to indemnify MW Builders for MW Builders' liability to Larkspur arising from the property damage caused by Portland Plastering. Knoll levied liability against Portland Plastering, the insured, for the property damage to the Hotel via the operation of the indemnity agreement in the Subcontract. SAFECO insured this liability by virtue of the "insured contract" exception to the contractual liability exclusion in the CGL Policies it issued to Portland Plastering. (Portland Plastering's liability resulted from its own conduct and, therefore, the contractual liability exclusion does not apply.) Therefore, liability has been imposed pursuant to a contractual indemnity provision in an "insured contract" and the contractual liability exclusion will not bar coverage.

Since SAFECO agreed to provide coverage for third-party tort liabilities assumed in an "insured contract," Portland Plastering was entitled to a defense against the indemnity claim as long as that claim was otherwise covered by the CGL Policies. However, because an exclusion cannot grant or extend the coverage provided for by the policy, SAFECO has a duty to indemnify MW Builders only to the extent of coverage and in accordance with the court's findings above, i.e., costs for repair of "other damage" to the Hotel caused by defective work, not the costs associated with removing and replacing Portland Plastering's defective work. For the forgoing reasons, the court concludes that the contractual liability exclusion does not apply because the Subcontract was an "insured contract" that escapes application of the "contractual liability" exclusion.

## 2. Faulty Work Exclusions

SAFECO again argues alternatively that any property damage that may have been caused by Portland Plastering is excluded by the SAFECO CGL Policies. SAFECO maintains that:

> All of Larkspur's EIFS-related injuries and damages fall into two relevant categories. One category includes the costs incurred to replace the EIFS. The other category includes the costs incurred to repair consequential water damage to various components of the [H]otel that was caused by the leaks in the EIFS installation.

SAFECO relies on the following two exclusions in the SAFECO CGL Policies to argue that recovery of any costs incurred to repair water damage to the Hotel is barred:

**SECTION I - COVERAGES**

2.  Exclusions

j.  Damage to Property

"Property damage" to:

(6) That particular part of any property that must be restored, repaired or replace because "your work" was incorrectly performed on it.

.  .  .  .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."[9]

.  .  .  .

l.  Damage to Your Work

"Property damage" to "your work" arising out of "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of

which the damage arises was preformed on your behalf by a subcontractor.

In sum, SAFECO argues that costs for replacing Portland

Plastering's faulty work are barred by exclusion "2.j.(6)". While

---

[9]  **Section V - DEFINITIONS**

14.  "Products-completed operations hazard":

a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. .  .  .

an exception to this exclusion applies to "property damage" included in the "products-completed operations hazard" that exception is inapplicable here, SAFECO argues, because the defects were built into the EIFS installation and, therefore, arose before the work was complete. SAFECO then concludes that any costs to repair all other damage to the Hotel is barred by exclusion "2.l." because none of the challenged work from which the damage arose was performed by a subcontractor.

MW Builders responds that Portland Plastering had completed all work at the Hotel before it became evident that its work and that of its sealant subcontractor, Spectra Caulking, was faulty and leading to wide-spread water damage to the Hotel. Because Portland Plastering had completed all work at the Hotel, Larkspur's claims were based on "products completed," which are expressly covered by the SAFECO CGL Policies. In addition, MW Builders contends that the "your work" exclusions are inapplicable because SAFECO has (1) failed to show that any portion of Knoll's damage award included costs related to Portland Plastering's own faulty workmanship; (2) the damage award included costs for the work performed by Spectra Caulking; and (3) Portland Plastering's work had become integrated and made part of a building.

As a threshold matter, the court previously determined that the costs incurred to remove and replace Portland Plastering's defective EIFS work are not covered "property damage" under the SAFECO CGL Polices. As such, there is no coverage for the costs to

remove and replace Portland Plastering's faulty EIFS installation. Thus, the court must determine only whether the "Damage to Your Work" exclusion in the SAFECO CGL Policies will bar recovery for the costs incurred to repair other water damage to the Hotel that was caused by the leaks in the EIFS installation.

With respect to costs associated with repairing the other water damage to the Hotel, the court finds the exclusions relied on by SAFECO will not bar recovery. While the court agrees that the exclusions relied on by SAFECO would bar recovery for damage to Portland Plastering's work product, they do not exclude damage to property of others. The other damage to the Hotel caused by water intrusion is covered by the SAFECO CGL Policies and the "your work" exclusion is not applicable to bar recovery.

Moreover, even if the exclusion could apply, material questions of fact remain that would preclude summary judgment. For example, SAFECO has failed to establish as a matter of law that Spectra Caulking was not responsible for some of the costs associated with repair to the Hotel, as Knoll did not portion out the basis for the costs awarded against Portland Plastering. In addition, Knoll expressly found that Spectra Caulking caused a portion of the damage for which costs were awarded. Specifically, Knoll found that "[a] significant cause of the repair costs were attributable to the application of the EIFS and the caulking of the EIFS around the penetrations[.]" Knoll went on to conclude that "[i]n particular when caulking the PTAC units, Portland

Plastering's subcontractor failed to install the correct or any caulk joints." Further, it is unclear when the damage to the Hotel arose for purposes of determining whether it would fall under the exception for completed operations.

## C.    Common-Law Indemnity

MW Builders contends that SAFECO is liable for the settlement costs under a theory of common-law indemnity, because Portland Plastering's fault exposed it to liability to Larkspur, exactly the type of circumstance giving rise to common law indemnity. Citing the decision in <u>Safeco Ins. Co. V. Russell</u>, 170 Or.App. 636, 639, 13 P.3d 519 (2000), MW Builders contends that it satisfied a legal obligation owed to Larkspur, a third party; Portland Plastering was itself liable for this legal obligation; and as between MW Builders and Portland Plastering, Portland Plastering is obligated to discharge that liability. MW Builders then summarily concludes that "[u]nquestionably, SAFECO must pay under its policy Portland Plastering's liability to MW Builders under common law indemnity theories. . . . SAFECO cannot refute that this type of liability is squarely covered under the SAFECO policies."

A party asserting an entitlement to common-law indemnity must prove three elements:

> In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. The last requirement means that, although the claimant must have been legally liable to the injured third party, his liability must

have been "secondary" or his fault merely "passive," while
that of the defendant must have been "active" or "primary."
Maurmann v. Del Morrow Construction, Inc., 182 Or.App. 171, 177, 48
P.3d 185 (2002)(quotations and citations omitted).

The court finds that MW Builders is not entitled to summary
judgment against SAFECO on a theory of common-law indemnity.  The
parties -- MW Builders and SAFECO -- did not owe a common duty to
Larkspur and, thus, the second requirement for indemnity has not
been satisfied.  To adopt MW Builders' argument for common-law
indemnity would transform that remedy to apply in any circumstances
in which two parties are liable to a third party and one, in
fairness, should ultimately bear the loss.  MW Builders has cited
no Oregon case in which such a rule has been adopted, and the cases
cited by MW Builders are distinguishable from the facts of this
case.

SAFECO had no obligation to Larkspur, neither as a party to a
contract nor in privity of contract.  That fact that Portland
Plastering's faulty work exposed MW Builders to liability to
Larkspur does give rise to a claim for recovery against SAFECO
under a theory of common-law indemnity.  MW Builders' claim against
SAFECO is for recovery that is dictated by  the terms of CGL
Policies, as determined by the court.  SAFECO cannot be liable to
MW Builders beyond the terms of the CGL Policies, nor can liability
be passed through to SAFECO in the form of a common-law indemnity

claim. MW Builders' request for summary judgment against SAFECO on this theory should be denied.

### D. Prevailing Party Fees/Defense Costs

Knoll awarded Prevailing Party Fees in the amount of $216,610 to MW Builders for attorneys' fees and costs incurred in the arbitration proceeding against Portland Plastering. These fees were awarded by Knoll pursuant to section 15.6 of the Subcontract between Portland Plastering and MW Builders, which included a provision that entitled MW Builders to recover attorneys' fees and costs if it prevailed on a breach of contract claim against Portland Plastering.

Knoll awarded Defense Costs in the amount of $70,934.30 to MW Builders for its share of attorneys' fees and costs incurred in defending claims by Larkspur. The arbitrator concluded that the basis for the Defense Costs was the indemnity clause in paragraph 10.1 of the Subcontract. The arbitrator explained that "[t]his [indemnity] clause requires Portland Plastering to indemnify and defend MW Builders for claims made against MW Builders on account of Portland Plastering's work."

SAFECO contends that these portions of the arbitration award -- Prevailing Party Fees and Defense Costs -- are not covered by the CGL Polices because they (1) are not "damages," (2) did not result from an "occurrence," and (3) fall within the contractual liability exclusion.

MW Builders responds that SAFECO is obligated to pay all attorneys' fees and defense costs under the "insured contract" provisions of the SAFECO CGL Policies, which expressly provides recovery for "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than the insured." The CGL Policies provide that such costs "are deemed to be damages because of . . . 'property damage.'" In addition, MW Builders points to the "Supplementary Payments - Coverages A and B" provision in the SAFECO CGL Policies as additional coverage for the award of attorneys' fees incurred in prosecuting the underlying case. That provision provides that "We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend: . . . . 5. All costs taxed against the insured in the 'suit'." Finally, MW Builders maintains that SAFECO is obligated by Oregon statute to pay all attorneys' fees and costs incurred by MW Builders in pursuing payment under the SAFECO CGL Policies. The court will consider in turn each of these bases for recovery of Prevailing Party Fees and Defense Costs.

### 1. Insured Contract Provision

SAFECO does not dispute that the express language of the insured contract exception provides coverage for "reasonable attorney fees and necessary litigation expenses incurred by . . . a party other than the insured. . . ." Rather SAFECO argues only that the indemnity agreement in the Subcontract is not an "insured contract" and, therefore, the CGL Policies do not provide coverage

for Portland Plastering's indemnity obligations as a cost.  In other words, the contractual liability exclusion, not the exception, applies here to bar recovery for the Prevailing Party Fees and Defense Costs.

The court determined above that the Subcontract, including the indemnity agreement, between Portland Plastering and MW Builders was an insured contract to which the SAFECO CGL Policies applied. In the Subcontract, Portland Plastering agreed to indemnify and defend MW Builders from liability caused by Portland Plastering (Defense Costs), as well as pay MW Builders' attorneys' fees and costs incurred in pursuing recovery from Portland Plastering under the indemnity claim (Prevailing Party Fees).  The provision in the SAFECO CGL Policies relied upon by MW Builders for coverage of these costs provides that "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be *damages*." (Emphasis added).  In addition, the provision sets forth two conditions that must be met before the costs are deemed to be damages, namely, liability for the defense costs must be assumed in the "insured contract" and the costs have to must be for defense against alleged damages that are covered by the policy; each of those conditions is satisfied here.

Both the Prevailing Party Fees and the Defense Costs were awarded to MW Builders by Knoll under the indemnity terms of the Subcontract between Portland Plastering and MW Builders.  The Subcontract was an insured contract.  The SAFECO CGL Policies

expressly provided coverage for reasonable attorney fees and necessary litigation expenses provided certain conditions are satisfied. MW Builders' attorneys' fees and costs are sums that Portland Plastering has become legally obligated to pay because of the harm caused to Larkspur, a third party, arising from Portland Plastering's work. The court concludes that the "insured contract" provision in the SAFECO CGL Policies provides coverage for Portland Plastering's obligation to pay the Prevailing Party Fees and Defense Costs awarded by Knoll. Accordingly, summary judgement on this issue should be granted in favor of MW Builders.

## 2. Supplementary Payments Provision

As mentioned above, MW Builders relies on the Supplementary Payments provision in the SAFECO CGL Policies as additional coverage for Knoll's award of Prevailing Party Fees and Defense Costs. In that provision SAFECO agrees to pay "[a]ll costs taxed against the insured in the 'suit'". MW Builders concludes without authority that the term "costs taxed," as used in this provision, includes attorney fees and defense costs. Conversely, SAFECO insists that the term "costs" does not refer to attorney fees and litigation expenses that are awarded pursuant to the prevailing party provision in the Subcontract. Rather, the term "costs" refers only to those costs that would be taxable in any suit, regardless of the nature of the claim.

Neither party cites any legal authority on point and, thus, the issue for the court is whether the term "costs taxed" in this

insuring clause includes the attorneys' fees awarded by Knoll. Commonly "costs taxed" simply refers to the amounts taxed by a court in a legal action. <u>See</u>, <u>e.g.</u>, <u>CIM Ins. Corp. v. Masamitsu</u>, 74 F.Supp.2d 975, 993 (D.Haw. 1999)(In general, coverage for costs taxed against the insured does not include an award of attorney's fees against the insured.)  In addition, Rule 68A(2) of the Oregon Rules of Civil Procedure provides that "[c]osts and disbursements" are reasonable and necessary expenses incurred in the prosecution or defense of an action *other than for legal services* . . . ." (Emphasis added). <u>See</u> <u>also</u> <u>Seattle-First National  Bank v. Schriber</u>, 51 Or.App. 441, 448, 625 P.2d 1370 (1981)(Attorneys' fees awarded "based upon the terms of a contract, are not properly awarded as costs.")

Moreover, the court is persuaded by SAFECO's argument that the CGL Policies use the term "attorney fees and necessary litigation expenses" to mean something different from the term "costs"; they are not interchangeable.  These terms are used in the CGL Policies in different contexts and must be given independent meaning and import.  The Supplementary Payments provision making "costs taxed against the insured" recoverable did not reference any other recovery, such as attorney fees.  Nothing in that provision, nor the CGL Policies suggests that the intent was to subsume attorney fees in the term costs.  The CGL Policies easily could have provided expressly for "attorney fees" as it did elsewhere in those policies.  In this instance the CGL Policy language was simply

41 - FINDINGS AND RECOMMENDATION                          lb

"costs taxed." The court finds that the term "costs taxed" in Supplementary Payment provision does not include attorney fees.

The court must now determine whether the "costs" assessed by Knoll are covered under the Supplementary Payment provision. Turning first to the Defense Costs, Knoll awarded $70,934.30 in fees and costs against Portland Plastering for a portion of MW Builders' expenses in defending the Larkspur action. These Defense Costs were passed on to Portland Plastering because of the indemnity provisions in the Subcontract; not because of a direct taxing of fees by a court or arbitrator. In addition, the Defense Costs awarded did not arise in an action against Portland Plastering but, rather, in Larkspur's action against MW Builders. As determined above, SAFECO is obligated to cover the Defense Costs imposed on Portland Plastering by Knoll because the SAFECO CGL Policies include coverage for liability assumed under and insured contract, not because of the Supplementary Payments provision. These Defense Costs are characterized as damages and they fall within the limits of the SAFECO CGL Policies.

On the other hand, Knoll awarded MW Builders $171,777.50 for attorney fees and $42,832.50 costs against Portland Plastering for the expenses arising out of arbitration. These Prevailing Party Fees were incurred by MW Builders when it brought suit against Portland Plastering to be indemnified for the Larkspur settlement. Because this action involved a suit directly against Portland Plastering, the insured, and was covered by the CGL Policies, the

42 - FINDINGS AND RECOMMENDATION                    lb

costs only are recoverable under the Supplementary Payments provision. Although the court has determined already that the arbitration costs awarded ($42,832.50) can be recovered under the insured contract provision of the SAFECO CGL Policies, the court also determines that they are payable under the Supplementary Payments provision as "costs taxed against an insured in the suit." Allowing coverage for the costs under the Supplementary Payments provisions, rather than as damages under the insured contract provision, has the effect of increasing coverage under the CGL Policies.[10]

In summary, the term "costs taxed" as used in the Supplementary Payments provision of the SAFECO CGL Policies does not include attorneys' fees. In any event, none of the Defense Costs assessed by Knoll against Portland Plastering are covered under that Supplementary Payments provision in the CGL Policies. Finally, only the arbitration costs ($42,832.50) awarded by Knoll as to MW Builders as part of the Prevailing Party Fees are covered by the Supplementary Payments provision. Accordingly, MW Builders' request for summary judgment on this issue should be granted, in part, and denied, in part.

---

[10] Because neither party has raised the issue, the court offers no opinion whether the fees and costs expended by MW Builders in this federal court action are recoverable under the Supplementary Payment provision of the SAFECO CGL Policies.

### 3.   Or. Rev. Stat. § 742.061

MW Builders also argues that SAFECO is liable for the attorney fees incurred in defending Larkspur's claims, pursuing the arbitration against Portland Plastering, and prosecuting the present lawsuit under Oregon statute. See Or. Rev. Stat. § 742.061. Regarding MW Builders' argument that attorney fees should be awarded pursuant to Or. Rev. Stat. § 742.061, which provides for recovery of attorney fees by successful plaintiffs in actions on insurance policies if certain conditions are met, the court determines that any recovery of attorney fees in an action on the policy under this statute should be resolved after judgment is entered.[11]

### E.   Additional Insured

This question of whether MW Builders was an additional insured under the SAFECO CGL Policies was resolved by a prior Findings and Recommendation issued by this court on September 14, 2004.[12]   The court determined that MW Builders was not an additional insured under SAFECO's 1996-1997 CGL Policy No. 01-CD-229396-5, but was an

---

[11]     Similarly, MW Builders' request for an award of pre and post judgment interest on the arbitration award is premature.   MW Builders' request for summary judgment on that issue is denied with leave to refile.

[12]     The filing of objections to the September 14, 2004, Findings and Recommendation (F&R) was stayed until the court issued the present F&R, and one more, resolving all remaining summary judgment motions (three total).

additional insured under SAFECO's 1997-1998 CGL Policy No. 01-CD-229396-6; 1998-1999 CGL Policy No. 01-CD-229396-7; and, 1999-2000 CGL Policy No. 01-CD-229396-8.  As such, MW Builders was entitled to coverage for damages occurring during those policy periods (1998-1999 and 1999-2000, respectively); that were caused by Portland Plastering's ongoing operations; and were covered by the terms of those policies.  (MW Builders' status as an additional insured would end upon the completion of Portland Plastering's work.)

### F.   Breach of Duty of Good Faith & Fair Dealing

MW Builders' fifth claim for relief -- breach of duty of good faith and fair dealing -- alleges that SAFECO failed to investigate, respond, and accept tender of defense of and liability for the Larkspur action.  MW Builders then alleges that SAFECO's failure to investigate, defend or indemnify them for the Larkspur claims constituted unfair claims-settlement practices as defined in Or. Rev. Stat. § 746.230 and Oregon law.

SAFECO moves for summary judgment against MW Builders' fifth claim for relief.  According to SAFECO, by this claim, MW Builders asserts only that "SAFECO acted in 'bad faith' by denying coverage for 'MW Builders as an additional insured.'"  SAFECO argues that this claim must fail because an insurer's denial of coverage cannot support a claim for extra-contractual or consequential damages; the insured's only remedy is a claim for breach of contract.  See, e.g., Warren v. Farmers Ins. Co. of Oregon, 115 Or.App. 319, 838

P.2d 620 (1992)(insurer who refuses to defend does not owe fiduciary duty to insured and, thus, is not liable for extra-contractual damages); <u>Northwest Pump v. American States Ins. Co.</u>, 144 Or.App. 222, 925 P.2d 1241 (1996)(insurer's breach of duty to defend entitles insured to recover defense costs, but not consequential damages).

Under Oregon law, a liability insurer must exercise good faith and due care in the settlement and defense of claims on behalf of its insured. <u>Radcliffe v. Franklin National Insurance Co.</u>, 208 Or. 1, 298 P.2d 1002 (1956); <u>Eastham v. Oregon Auto. Ins. Co.</u>, 273 Or. 600, 540 P.2d 364 (1975). In <u>Farris v. U.S. Fid. and Guar. Co.</u>, 284 Or. 453, 587 P.2d 1015 (1978), the insurer refused to defend at all. In that case, the Oregon Supreme Court held that damages in tort were not recoverable because performance was never undertaken. "[D]efendant's failure to undertake representation of plaintiffs which required them to represent themselves could only have been a breach of contract, and, in cases of breach, the law is clear that no recovery for mental distress because of threat of pecuniary loss is recoverable." 284 Or. at 464-65, 587 P.2d 1015; <u>see also</u> <u>Employers' Fire Ins. Co. v. Love It Ice Cream Co.</u>, 64 Or.App. 784, 791; 670 P.2d 160 (1983)(An insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon.); <u>Strader v. Grange Mut. Ins. Co.</u>, 179 Or.App. 329, 334 (2002))(An insurer's refusal to settle within policy limits sounds only in contract).

> If the plaintiff's claim is based solely on a breach of a
> provision in the contract, which itself spells out the party's
> obligation, then the remedy normally will be only in contract,
> with contract measures of damages and contract statutes of
> limitation. That is so whether the breach of contract was
> negligent, intentional, or otherwise.

Georgetown Realty Inc. v. Home Insurance Co., 313 Or. 97, 106, 831

P.2d 7 (1992).

An action against an insurance company for breach of the duty

of good faith and fair dealing sounds in tort. See Farris, 284 Or.

at 464-465. In this case MW Builders alleges that SAFECO never

undertook to defend or indemnify them in the Larkspur action. As

such, under Oregon law, MW Builders' claim against SAFECO for

failure to defend or indemnify is a breach of contract claim only.

Accordingly, summary judgment should be granted against MW

Builders' claim for breach of the duty of good faith and fair

dealing.

### G. Estoppel

MW Builders' ninth claim for relief, seeking the application

of estoppel to bar SAFECO from denying coverage for MW Builders as

an additional insured under the SAFECO CGL Policies, was resolved

by a prior Findings and Recommendation issued by this court on

September 14, 2004.

### H. Contribution/Indemnity

MW Builders' tenth claim for relief seeks contribution and

indemnity from SAFECO for the settlement amount of the Larkspur

claims that exceeded its proportionate share as well as the defense

47 - FINDINGS AND RECOMMENDATION                                    lb

costs incurred by MW Builders in defending the claims asserted by Larkspur.  The court determined above that summary judgment should be granted against MW Builders' claim for common-law indemnification.  Similarly, summary judgment should be granted against MW Builders' claim against SAFECO for contribution.  <u>See</u> <u>Huff</u>, 73 Or.App. at 609 ("The purposes and elements of statutory contribution and of common law indemnity differ in some respects; however, there is no logical reason why their common requirement that the claimant and the person from whom relief is sought both be liable to the same third party should apply differently in the two contexts."); <u>see</u> <u>also</u> <u>Transport Indemnity Co. v. BB & S, Inc.</u>, 63 Or.App. 392, 399 n. 7, 664 P.2d 1115 (1983)(analyzing and remanding contribution and indemnity claims together).

In Oregon, the right to recover contribution is governed by a specific statutory scheme, Or. Rev. Stat. § 31.800 (formerly Or. Rev. Stat. § 18.440).  The statute provides that "where two or more persons become jointly or severally liable in tort for the same injury to person or property . . . there is a right of contribution among them . . . .  There is no right of contribution from a person who is not liable in tort to the claimant."  Or. Rev. Stat. § 31.800(1).

Under the statute, MW Builders must show SAFECO is liable to Larkspur.  MW Builders is unable, as a matter of law, to show that SAFECO was liable to Larkspur either in tort or contract.  As such, MW Builders' liability to Larkspur cannot be passed through to

SAFECO using either a third-party indemnity or contribution claim. Accordingly, summary judgment should be granted against MW Builders' tenth claim for relief -- contribution and indemnity.

**CONCLUSION**

Based on the foregoing, MW Builders' Motion for Summary Judgment Against Defendants SAFECO and American States (doc. #80) should be granted, in part, and denied, in part; and SAFECO's Second Motion for Summary Judgment (doc. #85) should be granted in part, and denied, in part.

DATED this  14  day of December 2004

      /s/Donald C. Ashmanskas
        DONALD C. ASHMANSKAS
        United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation (F&R) will be referred to a United States District Judge for review once the pending summary judgment motions presently filed in this matter are resolved. Accordingly, the filing of objections to this F&R is stayed until the court issue an F&R for the remaining summary judgement motions (docs. #67, #72, #76). The court will notify the parties of the objections deadlines at that time.