FILED
MAY 13 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MW BUILDERS, INC., a Missouri
corporation; and GREAT AMERICAN
ALLIANCE INSURANCE COMPANY,
an Ohio corporation,

                      Plaintiffs,

   v.

SAFECO INSURANCE COMPANY OF
AMERICA, a Washington corporation;
SAFECO INSURANCE COMPANY OF
OREGON, an Oregon corporation;
AMERICAN STATES INSURANCE
COMPANY, an Indiana corporation;
ELLIOTT, POWELL, BADEN & BAKER,
INC., an Oregon corporation; REX &
COMPANY, an Oregon company;
LAWRENCE REX ESTATE, dba REX &
COMPANY (by and through its personal
representative, L.V. Rex); and LAWRENCE
REX TRUST (by and through its Trustee,
L.V. Rex),

                      Defendants.

No. CV 02-1578-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

Presently before the court is MW Builders, Inc.'s ("MW Builders") Motion for an Award of Expenses Pursuant to FRCP 37(c)(2). Specifically, MW Builders requests expenses in the amount of $9,396. For the reasons that follow, MW Builders' motion for expenses should be denied.

*Background*

The facts of this case have been thoroughly detailed in a number of written decisions issued by this court. *See, e.g., MW Builders, Inc. v. Safeco, Ins. Co. of Am.*, No. CV 02-1578-AS, 2004 WL 2058390 (D. Or. Sept. 14, 2004) (recounts background giving rise to litigation in district court), *MW Builders, Inc. v. Safeco, Ins. Co. of Am.*, No CV 02-1578-AC, 2009 WL 1161751 (D. Or. April 28, 2009) (recounts events following district court's entry of judgment and, subsequent appeal to Ninth Circuit). Both the parties and the court are very familiar with the lengthy procedural and factual history of this dispute and, as such, the background will not be restated here.

*Discussion*

On April 9, 2009, this court entered judgment against SAFECO Insurance Company of America ("SAFECO") in the amount of $620,000, following a determination that SAFECO failed to meet its burden of apportionment of the arbitrator's damages award against Portland Plastering. *See MW Builders, Inc., et al. v. SAFECO Ins. Co. of America, et al.*, CV No. 02-1578-AC, 2009 WL 995039 (D. Or. April 9, 2009). MW Builders charges that SAFECO's denial of certain request for admission forced it to incur expenses to prevail on those matters in order to be awarded the entire arbitration amount. MW Builders now seeks an award of those expenses.

Specifically, MW Builders seeks an award of $9,396 in witness fees ($1,176 for the expert witness fees paid to Jan Bredal, and $8,220 to obtain the affidavit of Jim Hansen) incurred allegedly as a result of SAFECO's failure to admit certain requests for admission of MW Builders. Rule 37(c)(2) of the Federal Rules of Civil Procedure, the authority governing MW Builders' request, provides in relevant part:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A) the request was held objectionable under Rule 36(a);
>
> (B) the admission sought was of no substantial importance;
>
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> (D) there was other good reason for the failure to admit.

FED. R. CIV. P. 37(c)(2).

"[R]ule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." FED. R. CIV. P. 37(c) advisory committee's notes (1970 Amendment). "Enforcement encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs. Failure to identify those issues wastes the resources of parties and courts." *Marchand v. Mercy Medical Center,* 22 F.3d 933, 936 (9th Cir. 1994); *see also Campbell v. Spectrum Automation Co.,* 601 F.2d 246 (6th Cir. 1979) (Rule 37(c) award of expenses appropriate when knowledge of sales of patented device more than one year prior to patent application was brought to party's attention well in advance of request of admission that party did not admit). Recoverable expenses are those

that flowed directly from denial, *Marchand,* 22 F.3d at 939, and include fees and costs "incurred in proving the truth of a matter where the other party refused to admit the matter." *Comeaux v. Brown & Williamson Tobacco Co.,* 915 F.2d 1264, 1275 (9th Cir. 1990).

Of course, prior to determining the appropriate remedy, the court must first determine whether SAFECO's responses to MW Builders' requests for admission were deficient. As mentioned above, MW Builders contends that SAFECO's denials of certain requests for admission forced it to incur expenses to prove those matters. Specifically, MW Builders seeks compensation for SAFECO's refusal to admit: (1) the Hotel owner incurred actual expenses to repair the damages to the Hotel caused by the faulty work of SAFECO's insured; (2) the $1.5 million bid by Mega Pacific to repair the Hotel was to address damages caused by the faulty work of SAFECO's insured; (3) MW Builders and the Hotel owner relied on that bid to settle the Hotel's claims that gave rise to the arbitrator's award; and (4) the fault work of SAFECO's insured caused ongoing damage to the Hotel triggering each of the applicable SAFECO policies.

First, regarding MW Builders' claim for compensation based on SAFECO's refusal to admit that the Hotel owner incurred actual expenses to repair the damages to the Hotel caused by Portland Plastering's work, SAFECO contends that the applicable requests for admission were of no substantial importance.[1] SAFECO maintains those requests were intended to establish both the authenticity of documents and the costs to repair damage to the Hotel caused by the faulty installation of the exterior insulation and finishing system ("EIFS"). According to SAFECO, however, because Judge Haggerty ultimately concluded that any apportionment of the settlement

---

[1] The specific requests for admission are numbers 31-33, 35, 37-53, 55-59, 62 and 63. (James P. Murphy Aff. Ex. A, May 26, 2009.) Each of these requests sought admissions related to specific documents, which were attached as exhibits.

Page 4 - FINDINGS AND RECOMMENDATION                                              [LB]

would be "unavoidably and unfairly speculative and arbitrary," *MW Builders,* 2009 WL 995039 at *6, evidence concerning the nature or cause of the damage to the Hotel was not material.

Similarly, in response to MW Builders' contention that it attempted to narrow disputes regarding the relationship between Mega Pacific's $1.5 million repair bid and MW Builders' and Larkspur's reliance on that bid to reach the $2 million settlement figure,[2] SAFECO again argues that Judge Haggerty's ruling rendered the cause of the damage to the Hotel irrelevant. As such, the attendant factors considered by MW Builders and Larkspur to determine a settlement amount were irrelevant.

Although SAFECO did not cite any legal authority for its challenge here, it is permissible for a party to rely on the trial court's ruling on summary judgment to oppose a request for expenses on the ground of no substantial importance. *See, e.g., Read-Rite Corp. v. Burlington Air Express, Ltd.,* 183 F.R.D. 545, 547 (N.D. Cal.1998) ("Since these requests [for admission] were based on the 'entire shipment' theory of liability and Judge Wilken found . . . that theory did not apply, these requested admissions were not substantially important to the litigation.") The circumstances of this case, however, are distinguishable from *Read-Rite Corp.*

In this case, the court ordered the parties to conduct discovery to determine "[W]hat portion of the $620,000 award of Arbitrator James Knoll [was attributable] to the hotel damage claim as distinguished from the EIFS repair claim[.]" (Ct's. Order July 9, 2008.) Additionally, the court instructed the parties to submit dispositive motions for summary judgment on this issue. While there was no dispute on summary judgment that the actual costs to repair the Hotel, excluding the EIFS removal and replacement, exceeded the $620,000 arbitrator's award, the court had been charged by

---

[2] The specific request for admission are numbers 28 and 29. (Murphy Aff. Ex. A.)

Page 5 - FINDINGS AND RECOMMENDATION                                    [LB]

the Ninth Circuit with the task of determining what portion of the $620,000 award was attributable to damages to the Hotel as opposed to the faulty installation of the EIFS. In order to calculate what portion of the $620,000 award should be attributed to the Hotel damage claim alone, the court reviewed MW Builders' settlement with Larkspur to determine what percent of the total $2 million settlement award was covered property damage and applied that percentage amount to the $620,000 award by Knoll. In conducting this analysis, the court relied upon both the Bredal and Hansesn affidavits, along with the supporting exhibits. *See MW Builders, Inc. v. Safeco Ins. Co. of Am*, No. 02-1578-AC, 2009 WL 995050, at *8 (D. Or. Jan. 28, 2009).

The court also relied upon those affidavits to find that the property damage to the Hotel began in June 1997, and continued through September 2000; and to determine that MW Builders was not limited to a single $500,000 policy limit. *Id.* at *9-10, 12. Under these circumstances, Judge Haggerty's decision to subsequently reject the allocation approach employed by this court did not render MW Builders' evidence on these issues of no substantial importance. Given the posture of the remand, i.e., the Ninth Circuit's express directive for this court to determine what portion of the $620,000 award should be attributed to the Hotel damage claim alone, the 30 requests for admission directed at the actual repair costs and the reliance of MW Builders and Larkspur on those amounts in reaching a settlement, SAFECO has failed to establish the Rule 37(c)(2)(B) exception of no substantial importance for those requests.

More compelling, however, is SAFECO's argument that it had reasonable grounds to deny that all of the repair costs reflected in the documents were attributable to Portland Plastering's faulty work. FED. R. CIV. P. 37(c)(2)(C). According to SAFECO, Knoll had previously determined that Portland Plastering was responsible for only a portion of the damages to the Hotel. SAFECO

contends that because MW Builders failed to prove that Portland Plastering's faulty work was the cause of all the repair costs, it is barred from recovering expenses under Rule 37. FED. R. CIV. P. 37(c)(2) ("*if* the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses") (emphasis added).

MW Builders responds that it employed Rule 36 requests for admission to avoid certain expenses related to proving the amount of covered damages, but SAFECO forced it to prove that the actual covered repair costs exceeded the $620,000 arbitrator's award when it denied the requests for admission. According to MW Builders, SAFECO disputed the amount of actual repair costs attributable to consequential water damages repairs and asserted that these repair costs did not exceed the arbitrator's $620,000 award against SAFECO. MW Builders argues that SAFECO lacked good cause to deny the requests for admission seeking to narrow the dispute as to the amount of actual repair costs incurred to repair damage to the Hotel caused by Portland Plastering's work and MW Builders' and Larkspur's reliance on those amounts to reach a settlement figure.

There is no question that Knoll determined Portland Plastering alone was liable for $620,000, or 31%, of the $2 million settlement with Larkspur. Additionally, the record is also clear that the *total property damage* to the Hotel, excluding the EIFS repairs, resulting from water infiltration well exceeded $620,000. *See MW Builders,* 2009 WL 995050, at *6, 8. MW Builders' argument here, however, is that in seeking requests for admission from SAFECO based on the attached budget estimates and invoices, MW Builders attempted to illicit from SAFECO an acknowledgment that Portland Plastering was 100% responsible for the water infiltration damage. For example, requests for admission nos. 62 and 63 stated:

Request for Admission No. 62: Admit that the documents attached as Exhibit R are true and correct copies of the final invoice documents of Mega Pacific Construction for costs and expenses *to address damages to the hotel that occurred as a result of faulty installation of the EIFS by Portland Plastering* (as referenced in the February 15, 2008 Memorandum Opinion of the Ninth Circuit).

Request for Admission No. 63: Admit that the documents attached as Exhibit R reflect costs and expenses incurred by Larkspur (the owner of the hotel) *to address damages to the hotel that occurred as a result of faulty installation of the EIFS by Portland Plastering* (as referenced in the February 15, 2008 Memorandum Opinion of the Ninth Circuit) relied upon by Larkspur and MW Builders at the time they entered a $2 million settlement on February 22, 2002.

(Murphy Aff. Ex. A at 24-25.) (Emphasis added.)

While it is undisputed that the damages to the Hotel, excluding the EIFS repairs, exceeded $620,000, Knoll found that MW Builders' own performance had caused significant property damage to the Hotel. Indeed, almost seven years ago, Knoll conclusively determined that:

> Portland Plastering through Gary Thompson and Ron White, its job foreman, approached MW Builders on several occasions and its architect at least on one occasion expressing concerns about the fact the PTAC units had not been installed prior to installing the EIFS, that some of the gyp sheathing was unsuitable and that the plans and specifications failed to provide for any horizontal expansion joints . . . . MW Builders does not deny that these conversations occurred. Despite these conversations, *MW Builders ignored these concerns and instructed Portland Plastering to proceed.*
>
> . . . .
>
> Water barrier EIFS is not an easy product to install and may be impossible to install properly over a wood frame building. Yet, the product is not on trial in this arbitration. This project had many signs of poor design, supervision and constructions as evidenced by all of the experts. *The real culprits that caused substantial damage to the Candlewood Suites were three: the architect, the general contractor [MW Builders] and its subcontractor, Portland Plastering.* The failure of the architect to properly design and spec the EIFS application and his failure to heed the suggestion of Mr. Thompson of Portland Plastering concerning expansion joints resulted in damage to the structure that had to be repaired. *The failure of MW Builders to properly sequence the work, install the PTAC drains [as] well as have the PTACs installed prior to installation of the EIFS and follow the advice of the*

> *experts (Portland Plastering) it retained to install the EIFS resulted in damage to the building.*

(Murphy Aff. – Opp. Def.'s Mot. Summ. J. – Ex. 22 at 10-12 (Interim Award), Nov. 5, 2003.) (Emphasis added.) By seeking admissions from SAFECO that Portland Plastering was entirely responsible for the water infiltration damage, MW Builders completely ignored the long-established apportionment of liability set forth by Knoll. MW Builders cites no authority for setting aside Knoll's apportionment of liability and allowing MW Builders to reach behind the $620,000 award to recover additional monies from SAFECO for the harm caused by MW Builder's own faulty work. Further, the Ninth Circuit had ordered this court to determine what portion of the $620,000 award should be allocated to damages apart from the EIFS work. MW Builders' requests for admission essentially asked SAFECO to concede that the entire $620,000 award was recoverable despite the Ninth Circuit's directive on this disputed issue.

In sum, as determined by Knoll, Portland Plastering's share of the liability for the damages was 31%. MW Builders, including its architect,[3] was responsible for 69% of the damages to the Hotel. MW Builders never challenged Knoll's determination that its own faulty performance caused a significant majority of the harm visited upon the Hotel. Yet in its requests for admission, MW Builders asked SAFECO to accept full responsibility for the damages reflected in the various invoices. (*See, e.g.,* Murphy Aff. Ex. A (which contains multiple examples of MW Builders' requests for SAFECO to admit that a particular document "address[es] damages to the hotel that occurred as a result of faulty installation of the EIFS by Portland Plastering").) SAFECO has

---

[3]Knoll determined that "[b]y contract, MW Builders is responsible for the acts and omissions of the project architect and for the construction, supervision and completion of the project in a competent manner." (Murphy Aff. – Opp. Def.'s Mot. Summ. J. – Ex. 22 at 10 (Interim Award).)

established reasonable grounds for its denials of the requests for admission.[4] Accordingly, MW Builders' request for an award of expenses should be denied.[5]

---

[4] Additionally, with regard to requests for admission nos. 28 and 29, SAFECO contends it had good cause to deny that Exhibit A, attached to those two requests for admission, was a bid. SAFECO explains that the document was a "budget estimate" on its face. Further, SAFECO argues that Exhibit A did not appear to be a bid, i.e., a proposal to perform specific work for a specific amount. MW Builders does not challenge SAFECO's denial on this ground. Accordingly, the court finds SAFECO has established reasonable grounds for its denials of requests 28 and 29.

[5] Because the court has determined SAFECO had reasonable grounds for its denials, it need not reach the additional issues raised by SAFECO in opposition to MW Builders' request for an award of expenses. The court notes, however, that MW Builders' request is for expenses it incurred *prior* to SAFECO's denials. For example, MW Builders requests expenses in the amount of $994 for work by Bredal between August 1, 2008, and August 31, 2008. (Murphy Aff. Ex. C.) In its opposition brief, SAFECO explains that it mailed its responses to the requests for admission on August 22, 2008, and, according to the billing records for MW Builders' counsel, the first review of those responses occurred on August 28, 2008. (Def.'s Opp. Expenses 5.) Additionally, SAFECO points out that Bredal was on vacation from August 28 through September 9. (Def.'s Opp. Expenses 5.) In its Reply brief MW Builders does not dispute the timeline set forth by SAFECO, nor does it deny seeking expenses incurred prior to SAFECO's denials. Thus, the record is clear that all of Bredal's work performed in August 2008 was undertaken before MW Builders knew of SAFECO's responses to its requests for admission.

The purpose of Rule 37(c) is to provide posttrial relief to one party for another party's improper refusal to admit by requiring the refusing party to pay the expenses of the other side in making the necessary proof at trial. FED. R. CIV. P. 37(c), Advisory Committee Notes to 1970 amendment. Enforcement of the rule encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs because a failure to identify those issues wastes the resources of parties and courts. *Marchand*, 22 F.3d at 936. "Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *Id.* at 936-37 (citing William W. Schwarzer, *The Federal Rules, the Adversary Process, and Discovery Reform*, 50 U. Pitt. L. Rev. 703, 721 (1989)).

Rule 37 clearly authorizes reasonable expenses "incurred in making that proof." FED. R. CIV. P. 37(c)(2). Under Ninth Circuit law, reasonable expenses are those that "flow[] directly" from the improper answers. *Marchand*, 22 F.3d at 939. Intuitively then, it would seem that the Ninth Circuit's flow directly standard contemplates payment for efforts undertaken only as a result of a wrongful denial. *See, e.g., Hicklin Engineering, L.C. v. Bartell*, No. 00-C-1516, 2005 WL 3805914, at * 2-3 (E.D. Wis. March 31, 2005) ("Attorneys' fees for work performed before the plaintiff submitted its response to the requests for admissions are not included in the fees to be awarded since these expenses were incurred before any conduct occurred which fell within the

*Conclusion*

Based on the foregoing, MW Builders' Motion for an Award of Expenses Pursuant to FRCP 37(c)(2) (doc. #258) should be denied.

DATED this ___ day of May 2010.

_____
JOHN V. ACOSTA
UNITED STATES MAGISTRATE JUDGE

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **May 27, 2010**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

---

scope of Rule 37.") Additionally, it must be assumed that work undertaken *before* a party was aware of a denial served some other purpose within the litigation strategy. Thus, an argument that those earlier expenses flowed directly from the denial alone becomes more problematic. MW Builders has not cited any legal authority for its effort to recover expenses here that were incurred *prior* to SAFECO's denials. While a ruling on this issue is not required, the fact that MW Builders' seeks reimbursement for costs incurred prior to SAFECO's denials could provide an alternate basis for denying its motion.

Page 11 - FINDINGS AND RECOMMENDATION                                                              [LB]